CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
GEORGINA WAKEFIELD (Bar. No. 282094)
(E-Mail: Georgina_Wakefield@fd.org)
CRAIG A. HARBAUGH (Bar. No. 194309)
(E-Mail: Craig_Harbaugh@fd.org)
J. ALEJANDRO BARRIENTOS (Bar. No. 346676)
(E-Mail: Alejandro_Barrientos@fd.org)
Deputy Federal Public Defenders
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone:  (213) 894-2854
Facsimile:  (213) 894-0081

Attorneys for Defendant
THOMAS VINCENT GIRARDI

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 2:23-CR-00047-JLS-1 |
| Plaintiff, | **DEFENDANT'S OPPOSITION TO GOVERNMENT'S MOTION TO EXCLUDE EXPERT TESTIMONY OF KATE CORRIGAN PURSUANT TO FEDERAL RULES OF EVIDENCE 401, 402, 403, AND 702** |
| v. | |
| THOMAS VINCENT GIRARDI, | |
| Defendant. | |

## TABLE OF CONTENTS

Page

MEMORANDUM OF POINTS AND AUTHORITIES..................................................1

I.   INTRODUCTION .................................................................................................1

II.  SUMMARY OF MS. CORRIGAN'S ANTICIPATED TESTIMONY. ...............2

III. LEGAL STANDARDS .........................................................................................3

    A.   The relevant legal standards for determining a defendant's competency to stand trial. .........................................................................3

    B.   The relevant legal standards for admission of expert testimony. ...............5

IV.  ARGUMENT..........................................................................................................5

    A.   The opinions and observations of criminal defense attorneys receive significant weight as to a defendant's competency to stand trial. ...............5

    B.   The single case cited by the government is distinguishable and does not support excluding Ms. Corrigan's testimony.........................................9

    C.   Because this type of evidence is relevant, it cannot reasonably be disputed that Ms. Corrigan is qualified to render the opinions or that her opinions are reliable. ........................................................................11

V.   CONCLUSION ....................................................................................................13

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Balfour v. Haws,*
 892 F.2d 556 (7th Cir. 1989) ..................................................................................5

*United States v. Clark,*
 617 F.2d 180 (9th Cir. 1980) ...............................................................................4, 5

*Cooper v. Oklahoma,*
 517 U.S. 348 (1996)..............................................................................................3, 4

*Daubert v. Merrill Dow Pharmaceuticals,*
 509 U.S. 579 (1993)..................................................................................................5

*United States v. David,*
 511 F.2d 355 (D.C. Cir. 1975)............................................................................6, 11

*United States v. Denton,*
 434 F.3d 1104 (8th Cir. 2006) .................................................................................5

*Drope v. Missouri,*
 420 U.S. 162 (1975)..................................................................................................3

*United States v. Duhon,*
 104 F. Supp. 2d 663 (W.D. La. 2000) ...................................................................6, 7

*Dusky v. United States,*
 362 U.S. 402 (1960)..................................................................................................3

*United States v. Garza,*
 751 F.3d 1130 (9th Cir. 2014) .................................................................................4

*United States v. Gastelum-Almeida,*
 298 F.3d 1167 (9th Cir. 2002) .............................................................................9, 10

*United States v. Ghane,*
 593 F.3d 775 (11th Cir. 2010) .................................................................................6

*United States v. Hankey,*
 203 F.3d 1160 (9th Cir. 2000) .................................................................................5

*Hernandez v. Ylst,*
 930 F.2d 714 (9th Cir. 1991) ...................................................................................5

# <u>TABLE OF AUTHORITIES</u>

Page(s)

*Medina v. California*,
   505 U.S. 437 (1992)..................................................................................... 4, 6

*United States v. Merriweather*,
   921 F. Supp. 2d 1265 (N.D. Ala. 2013) ........................................................ 6

*Odle v. Woodford,*
   238 F.3d 1084 (9th Cir. 2001) ....................................................................... 6

*United States ex rel. Roth v. Zelker*,
   455 F.2d 1105 (2d Cir.) .................................................................................. 6

*Stanley v. Cullen,*
   633 F.3d 852 (9th Cir. 2011) ......................................................................... 3

*United States v. White,*
   670 F.3d 1077 (9th Cir. 2012) ....................................................................... 4

**Federal Statutes**

18 U.S.C. § 4244............................................................................................... 3

18 U.S.C. § 4247............................................................................................... 4

**Federal Rules**

Fed. R. of Evid. 702......................................................................................... 4, 5

**Other Authorities**

Cal. Rules Prof'l Conduct 3.7.......................................................................... 8

Model R. Prof. Conduct Rule 3.7, Cmt. 1 (ABA 2020) .................................. 8

Hous. J. Health L. & POL'Y 193, 234 (2004)................................................. 11

S. Jan Brakel, Diane S. Goldstein & Rodgers M. Wilson, Independent
   Lawyer Consultation: A Practicum of Ethics for the Forensic Mental
   Health Expert 32 J. PSYCHIATRY & L. 169 (2004)............................................ 1, 2

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION

Despite decades of Supreme Court and Circuit Court case law holding the opposite, the government contends that a lawyer's opinion that a defendant is unable to properly assist in his defense is "irrelevant, unreliable, and a waste of time" because a lawyer is not a "medical professional."  (Gov't Opp. at 2:21-3:2.)  The case law on mental competency, none of which was cited by the government in its moving papers, is clear: the opinions and observations of defense counsel are not only relevant to a court's determination of a defendant's competency to stand trial, they are to be given significant weight.  Following this edict, courts have received opinion testimony not only from counsel of record, but also from independent criminal defense practitioner experts about whether a defendant can understand the proceedings or properly assist in his defense.  In fact, the government's own retained neuropsychologist is the author of a paper advocating for forensic psychologists to retain and use independent lawyer-experts.[1]

While relevant as a matter of law, this testimony is even more germane here. Neuropsychologists retained by both parties agree that Mr. Girardi suffers from a cognitive impairment.  And a neurologist has diagnosed Mr. Girardi with moderate dementia.  The Court must decide how the impairment affects Mr. Girardi's functioning and, in particular, his ability to properly assist in his defense.  The opinion of Kate Corrigan, a qualified criminal defense practitioner, is reliable evidence for the Court to consider in determining what is required of Mr. Girardi to properly assist in his defense in this case and whether he can do it.  The Court should decline the government's invitation to ignore precedential authority.

---

[1] S. Jan Brakel, Diane S. Goldstein & Rodgers M. Wilson, *Independent Lawyer Consultation: A Practicum of Ethics for the Forensic Mental Health Expert*, 32 J. PSYCHIATRY & L. 169 (2004) (Exhibit A).

The government's suggestion that Ms. Corrigan is offering a medical opinion or diagnosis mischaracterizes the expert notice.  She is opining that Mr. Girardi is unable to properly assist in his defense in the case pending before the Court.  Because the Court must determine whether Mr. Girardi can properly assist in his defense, Ms. Corrigan's testimony goes to the heart of that issue.  As an attorney practicing criminal law for nearly 36 years, Ms. Corrigan is more than qualified to opine about what is required of a criminal defendant to properly assist in his defense.

The government's motion should be denied.

**II.  SUMMARY OF MS. CORRIGAN'S ANTICIPATED TESTIMONY**.

Ms. Corrigan was retained by counsel for Mr. Girardi to render an opinion about whether Mr. Girardi is able to properly assist in his defense.

Ms. Corrigan has been a member of the California bar for almost 36 years.  She is a former prosecutor and a member of Corrigan Welbourn & Stokke, APLC.  Her law firm's practice is limited to criminal defense and she has extensive experience representing individuals facing criminal prosecution in state and federal court, including for fraud offenses.  She has received several awards and accolades for her accomplishments, including the 2018 Life Time Achievement Award, the Judge Alicemarie H. Stotler Award, which was bestowed on her by the Federal Bar Association of Orange County in recognition of Ms. Corrigan's excellence in federal practice and contributions to the legal community and the Central District of California.

As discussed in the 17-page expert notice provided by counsel for Mr. Girardi to the government on June 2, 2023, Ms. Corrigan observed four meetings between Mr. Girardi and his counsel.  (Doc. No. 60, Exh. C.)  Those meetings are described in the notice in over twelve pages of single-spaced text.[2]  (*Id*. at p. 4-12.)  Based on Ms.

---

[2] Ms. Corrigan's observations are consistent with those of other witnesses who have observed Mr. Girardi, including Mr. Girardi said he was unable to recall his

2

1  Corrigan's observations, her review of discovery relevant to the topics covered during

2  the meetings with Mr. Girardi, and her training and experience as a practicing attorney

3  for almost 36 years, it is Ms. Corrigan's opinion that Mr. Girardi appears unable to

4  properly assist in his defense in this matter. [3]  (*Id*. at p. 16-17.)

5

6                        **III.  LEGAL STANDARDS**

7  **A.    The relevant legal standards for determining a defendant's competency**

8         **to stand trial**.

9         A criminal defendant may not be tried unless he is competent.  *Cooper v.*

10 *Oklahoma*, 517 U.S. 348, 364 (1996).  The criminal trial of an incompetent person

11 violates the right to substantive due process.  *Stanley v. Cullen*, 633 F.3d 852, 860 (9th

12 Cir. 2011) (citations omitted).

13        Under 18 U.S.C. § 4244, a defendant is incompetent to stand trial if he is "unable

14 to understand the proceedings against him or to properly assist in his own defense."

15 The test is "whether he has sufficient present ability to consult with his lawyer with a

16 reasonable degree of rational understanding—and whether he has a rational as well as

17 factual understanding of the proceedings against him."  *Dusky v. United States*, 362

18 U.S. 402, 402 (1960); *Drope v. Missouri*, 420 U.S. 162, 171 (1975).  The Supreme

19 Court has explained that a criminal defendant who cannot communicate effectively

20 with or assist his counsel:

21              [M]ay not be able to exercise other "rights deemed essential to
                a fair trial." After making the "profound" choice whether to
22              plead guilty, the defendant who proceeds to trial will ordinarily

23 ─────────────────────────
   attorneys or that he was represented by the Federal Public Defender's Office; Mr.
24 Girardi wore the same holed sweater two days in a row; and Mr. Girardi appeared to
   struggle to retain factual information, including that his firm no longer existed and he
25 was no longer a practicing attorney with cases to work on.  *Id.*

26      [3] The government states that Ms. Corrigan is also providing an opinion about Mr.
   Girardi's ability to assist in his defense in the case pending in the Northern District of
27 Illinois (Gov't Opp. at 7:24), but that is inaccurate.  Ms. Corrigan was retained by the
   Federal Public Defender's Office for the Central District of California for the case
28 pending before this Court.  Ms. Corrigan has not been retained by the lawyer
   representing Mr. Girardi in Chicago, she did not observed meetings between that
   lawyer and Mr. Girardi, and she did not review discovery in that case.

                                    3

have to decide whether to waive his "privilege against compulsory self-incrimination" by taking the witness stand; if the option is available, he may have to decide whether to waive his "right to trial by jury"; and, in consultation with counsel, he may have to decide whether to waive his "right to confront [his] accusers" by declining to cross-examine witnesses for the prosecution. With the assistance of counsel, the defendant is also called upon to make myriad smaller decisions concerning the course of his defense. The importance of the rights and decisions demonstrates that an erroneous determination of competence threatens a 'fundamental component of our criminal justice system'—the basic fairness of the trial itself.

*Cooper*, 517 U.S. at 364 (internal citations omitted).

A defendant has certain rights at a competency hearing, including the right to testify, present evidence, subpoena witnesses on his behalf, and confront and cross-examine witnesses who appear at the hearing.  18 U.S.C. § 4247(d).

The Ninth Circuit has identified three broad categories of evidence for the Court to consider in determining competency: (1) the defendant's medical history; (2) the defendant's behavior in and out of court; and (3) the opinions and observations of defense counsel about the defendant's competency.  *United States v. Garza*, 751 F.3d 1130, 1134 (9th Cir. 2014); *see also United States v. White*, 670 F.3d 1077, 1085 (9th Cir. 2012) (district court relied on defendant's attorney's "opinion, based on his observations of [the defendant]" about the defendant's ability to cooperate with counsel).

The opinions and observations of defense counsel are "significant evidence." *United States v. Clark*, 617 F.2d 180, 186 n. 11 (9th Cir. 1980).  As the Supreme Court has observed, "The defendant's inability to assist counsel can, in and of itself, constitute probative evidence of incompetence, and defense counsel will often have the best informed view of the defendant's ability to participate in his defense." *Medina v. California*, 505 U.S. 437, 450 (1992) (citing *United States v. David*, 511 F.2d 355, 360 (D.C. Cir. 1975); *United States ex rel. Roth v. Zelker*, 455 F.2d 1105, 1108 (2d Cir.), cert. denied, 408 U.S. 927 (1972)).

**B.**   **The relevant legal standards for admission of expert testimony**.

Federal Rule of Evidence 702 states:

> A witness who is qualified as an expert by knowledge, skill, experience, training or education may testify in the form of an opinion if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied principles and methods to the facts of the case. As "gatekeeper," this Court has discretion under Rule 702 to decide whether an expert's testimony rests upon a reliable foundation.

*Daubert v. Merrill Dow Pharmaceuticals*, 509 U.S. 579, 592 (1993).

Rule 702 is "construed liberally" when the trial judge is determining the reliability and "admissibility of [proposed expert] testimony based on some 'other specialized knowledge'" that is not scientific knowledge.  *United States v. Hankey*, 203 F.3d 1160, 1167-68 (9th Cir. 2000).

# IV.  ARGUMENT

**A.**   **The opinions and observations of criminal defense attorneys receive significant weight as to a defendant's competency to stand trial**.

The thrust of the government's opposition is that because Ms. Corrigan is not a licensed psychiatrist or psychologist, she is both unqualified and unable to assist the Court with respect to Mr. Girardi's competency because she cannot opine about matters such as malingering or neuropsychology.  (Opp. at 2:25-3:1; 6:18-8:20).  The problem with this argument is two-fold.  First, as discussed below, the defense will not ask Ms. Corrigan to opine about those matters.  And second, the case law, none of which was cited let alone discussed by the government in opposition, holds that a lawyer's opinions and observations are not only relevant but should receive significant weight.  *Clark*, 617 F.2d at n. 11 (9th Cir. 1980) (attorney's opinion about competence is "significant evidence"); *Hernandez v. Ylst*, 930 F.2d 714, 718 (9th Cir. 1991) (same);

1    *see also United States v. Denton*, 434 F.3d 1104, 1112-13 (8th Cir. 2006) (trial

2    counsel's opinion should receive "significant weight"); *Balfour v. Haws*, 892 F.2d 556,

3    561 (7th Cir. 1989) ("[c]ounsel, perhaps more than any other party or the court, is in a

4    position to evaluate a defendant's ability to understand the proceedings") (internal

5    quotations omitted); *Roth*, 455 F.2d at 1108 (2d Cir. 1972) ("The opinion of a

6    defendant's attorney as to his ability to understand the nature of the proceedings and to

7    cooperate in the preparation of his defense, is indeed significant and probative."). In

8    fact, courts have observed that "counsel's first-hand evaluation of a defendant's ability

9    to consult on his case and to understand the charges and proceedings against him *may*

10   *be as valuable as an expert psychiatric opinion on his competency*." *David*, 511 F.2d at

11   360 (emphasis added) (cited with approval in *Medina* 505 U.S. at 450).

12          An attorney's opinions and observations are especially important where, as here,

13   the defendant's possible incompetency relates to his ability to assist in his defense. *See,*

14   *e.g.*, *United States v. Ghane*, 593 F.3d 775, 784 (11th Cir. 2010) ("[I]t was incumbent

15   on the district court to have considered [defendant's] attorney's opinion about

16   [defendant's] competence, particularly in light of the district court's conclusion that it

17   was only [defendant's] inability to assist in his defense—a subject about which his

18   attorney would have valuable insight—that made him incompetent."). This makes

19   sense. A criminal defense attorney is in the best position to observe and explain to the

20   Court how the defendant must be able to consult with his attorney in a particular case to

21   assist in his defense and how he cannot do so. And a criminal defense attorney, unlike

22   a neuropsychologist, has the training and experience to know what is required of a

23   defendant to assist in the defense in a particular case. *Cf. Odle v. Woodford*, 238 F.3d

24   1084, 1089 (9th Cir. 2001) (competence requires more than passive observation, but

25   "the mental acuity to see, hear, digest the evidence, and the ability to communicate with

26   counsel in helping prepare an effective defense").

27          Because of the significance of this evidence, district courts have permitted

28   lawyer-experts to provide opinion testimony about a defendant's ability to assist in his

defense.  *See, e.g.*, *United States v. Merriweather*, 921 F. Supp. 2d 1265, 1276 (N.D. Ala. 2013) (among the witnesses called by the defense at the competency hearing included a legal expert); *United States v. Duhon*, 104 F. Supp. 2d 663 (W.D. La. 2000) (the court appointed its own lawyer-expert to testify).  In *Duhon*, the defendant, who suffered from an intellectual disability, was found incompetent and committed to the custody of the Attorney General for hospitalization.  *Id*. at 667-68.  After his commitment, the warden at the defendant's place of commitment (FCI Butner) certified that the defendant had been restored to competency and attached a forensic evaluation signed by a staff psychiatrist and staff psychologist at FCI Butner.  *Id*. at 668.  In response, the court scheduled another evidentiary hearing and designated two expert witnesses to testify at the hearing: a forensic psychologist and a criminal defense attorney.  *Id*. at 669.  As to the court-appointed criminal defense attorney, the court noted:

> It has been observed that a multi-disciplinary approach is often critical in resolving competency issues, particularly where, as here, the focus is on a defendant's ability to assist counsel.  In such a case, "one of the most evident issues is whether the assessing professional, usually a psychiatrist or a psychologist, really knows what would normally go into the defense of the case."

*Id*. at 669 (internal citation omitted).

The court-appointed criminal defense attorney testified at the evidentiary hearing.  *Id*. at 676.  He had worked as an Assistant United States Attorney for three years in the criminal division and as a private criminal defense attorney for over ten years.  *Id*.  After meeting separately with the defendant and the forensic psychologist and reviewing documents and records, he testified that the defendant would have a difficult time understanding what he was admitting to during a guilty plea colloquy and what rights he was giving up by pleading guilty.  *Id*.  The lawyer also opined that if he represented the defendant, he did not believe the defendant could provide any assistance.  *Id*.  Ultimately, the lawyer-expert concluded that the defendant lacked the "mental capacity to consult with his lawyer with a reasonable degree of rational

1  understanding to otherwise assist in his defense even though he ha[d] a limited if

2  rational understanding of the criminal proceedings and his situation as a defendant."

3  *Id.*

4      As in *Duhon*, Ms. Corrigan is an experienced criminal defense practitioner who

5  is being offered as expert witness to opine on Mr. Girardi's ability to assist in his

6  defense, including his ability to consult with his counsel with a reasonable degree of

7  rational understanding.  Her opinions, which are based in part on her observations of

8  attorney-client meetings, are not just relevant, they are "significant evidence" that only

9  someone who knows what goes into preparing a defense can opine about.

10      Furthermore, receiving the testimony from Ms. Corrigan, an independent

11  criminal defense practitioner, rather than Mr. Girardi's assigned counsel avoids

12  potential ethical pitfalls.  Lawyers are generally prohibited from acting as an advocate

13  in a trial in which the lawyer is likely to be a witness.  Cal. Rules Prof'l Conduct 3.7.

14  That is because "[c]ombining the roles of advocate and witness . . . can [] involve a

15  conflict of interest between the lawyer and client."  Model R. Prof. Conduct Rule 3.7,

16  Cmt. 1 (ABA 2020).  And where the lawyer testifies in the client's presence and gives

17  an opinion on competence that differs from the client's, the client may question his or

18  her attorney's loyalty, which could impair the attorney-client relationship moving

19  forward.

20      In addition, the government's expert, Dr. Goldstein, neither asked for Mr.

21  Girardi's lawyer's opinions or observations, nor did she consider them before reaching

22  her opinion and writing her report.  The defense is unaware of Dr. Goldstein possessing

23  any experience or training on representing criminal defendants in fraud cases, how to

24  prepare a defense in a criminal fraud case, or what is required of a defendant to

25  properly assist his counsel.  Because Dr. Goldstein did not even ask about counsel's

26  observations and opinions, and that is a significant factor under the case law, Ms.

27  Corrigan's testimony also is relevant and important to the Court's evaluation of Dr.

28  Goldstein's opinions and testimony.

8

1        In sum, an attorney's opinions and observations about a client's competency are

2  significant evidence the Court must consider.  And courts have received opinion

3  testimony from criminal defense practitioner experts, particularly where competence

4  relates to a defendant's ability to assist his counsel.  The Court should consider Ms.

5  Corrigan's opinions and observations here, particularly because they avoid potential

6  ethical issues that would arise if Mr. Girardi's counsel of record testified instead.

7

8  **B.     The single case cited by the government is distinguishable and does not**

9           **support excluding Ms. Corrigan's testimony**.

10        Against the backdrop of overwhelming Ninth Circuit and out-of-circuit case law

11  emphasizing the significant weight to be given to testimony from criminal defense

12  practitioners, the government cites a single Ninth Circuit case, which is readily

13  distinguishable.  *United States v. Gastelum-Almeida*, 298 F.3d 1167 (9th Cir. 2002) did

14  not even involve, much less discuss, whether the defense is permitted to offer an

15  independent defense attorney to testify about whether the defendant is able to properly

16  assist in his defense.  The defendant challenged the district court's finding that he was

17  competent to stand trial.  A psychological evaluation was conducted by the Chief

18  Forensic Psychologist at the detention center where the defendant was incarcerated.  *Id*.

19  at 1171.  The expert concluded that the defendant was "angry about the charges, the

20  potential sentence he may receive if convicted, and toward those he views as not

21  helping his situation, but there is no objective evidence to support his suffering from a

22  major mental disorder that impairs his present ability to consult with his lawyer with a

23  reasonable degree of rational understanding, or that impairs his having a rational as

24  well as factual understanding of the proceedings against him."  *Id*.  The district court

25  credited the expert's opinion and found the defendant competent to stand trial.

26        One of the grounds on which the defendant challenged the district court's

27  conclusion was its refusal to permit his defense counsel to testify about her "personal

28  observations" of the defendant's allegedly bizarre behavior.  *Id*. at 1172.  The Ninth

1    Circuit reviewed the claim for clear error.  To begin with, the Court noted that defense

2    counsel had "ample opportunity" to discuss her observations with the government's

3    expert, and the expert considered those comments in his evaluation.  The defense expert

4    also considered the observations.  And the court observed that defendant's attorney

5    could have but did not file an affidavit within the five months between when the

6    competency hearing was ordered and when it was held.  *Id.*

7         *Gastelum-Almeida* is distinguishable for many reasons.  First, unlike *Gastelum-*

8    *Almeida*, all the experts here agree that Mr. Girardi suffers from a cognitive disorder.

9    The defense's neurologist found that Mr. Girardi has moderate dementia, ECF No. 60,

10   at 118, and its neuropsychologist similarly found he has a Major Neurocognitive

11   Disorder, *id.*, at 39.  Even the government's neuropsychologist concedes Mr. Girardi

12   had Mild Cognitive Impairment as early as late 2020:

13              I do think it likely that Mr. Girardi met the diagnostic criteria
              for a Mild Cognitive Disorder (specifically, Mild Cognitive
14              Impairment) at that time based on review of two videotaped
              depositions in September and October of 2020, a videotaped
15              podcast in October of 2020, and a videotaped MCLE in
              November of 2020, all prior but proximal to the initiation of a
16              criminal       investigation       in       December       2020.

17   ECF No. 64, at 69.

18        By contrast, the experts in *Gastelum-Almeida* disagreed about whether the

19   defendant suffered from schizophrenia, a psychotic disorder.  It is a straight-forward

20   task for a forensic psychologist to observe and diagnose whether a defendant suffers

21   from a psychotic disorder.  His attorney's observations are not required for such a

22   determination.  Because Mr. Girardi suffers from a cognitive *impairment*, not a

23   psychotic disorder, the evaluation of how the impairment affects his functioning and, in

24   particular, his ability to properly assist in his defense is at the heart of the competency

25   dispute in this case.  Who better than an experienced practicing criminal defense

26   attorney to explain how a defendant with Mr. Girardi's symptoms would impair his

27   ability to communicate with his counsel and assist in his defense?

28

                                          10

1    In addition, as discussed above, Dr. Goldstein did not ask for Mr. Girardi's

2    counsels' opinions or observations.  And Ms. Corrigan's proposed testimony was

3    noticed well before the competency hearing.  *Gastelum-Almeida* does not support

4    excluding Ms. Corrigan's testimony.

5

6    **C.    Because this type of evidence is relevant, it cannot reasonably be**

7    **disputed that Ms. Corrigan is qualified to render the opinions or that**

8    **her opinions are reliable**.

9    As discussed above, it is firmly established that the opinions and observations of

10   criminal defense attorneys receive significant weight in determining a defendant's

11   competency to stand trial.  Yet the government contends that Ms. Corrigan is

12   unqualified to render the opinion that Mr. Girardi is unable to assist in his defense

13   because she is not a licensed psychiatrist or psychologist.  (Gov't at 6:20-25.)

14   Similarly, the government claims that Ms. Corrigan's opinion is unreliable because she

15   "lacks any medical training or expertise."  (Gov't Opp. at 7:16-18.)  The case law cited

16   above readily disposes of these related arguments.  In all of the cases cited above,

17   courts relied on an attorney's opinion about the defendant's ability to assist in his

18   defense and did not find the attorney unqualified or the opinion unreliable for lack of

19   psychological, psychiatric, or medical training.  As Chief Judge Bazelon said in *David*,

20   cited approvingly by the Supreme Court in *Medina*, "counsel's firsthand evaluation of a

21   defendant's ability to consult on his case and to understand the charges and proceedings

22   against him may be as valuable as an expert psychiatric opinion on his competency."

23   511 F.2d at 360; *see also* Morris et al., 4 Hous. J. Health L. & Pol'y 193, 234 (2004)

24   (observing that psychiatrists and psychologists "can explain how a person's mental

25   disorder affects, or may affect, his or her understanding of issues and decision making

26   capability.  But they are not expert in deciding whether the defendant has a 'sufficient'

27   ability to consult with his or her attorney or has a 'reasonable' degree of rational

28

11

1   understanding.  Those decisions are legal policy decisions appropriately within the

2   province of the judge.").

3          The government's other issue with Ms. Corrigan is that she has "no expertise in

4   diagnosing or evaluating whether an individual is cognitively impaired; the potential

5   presence of a mental disease or defect affecting the individual's abilities [to] receive,

6   process and communicate information; and/or whether the individual's presentation is

7   the result of malingering or feigning impairment." (Gov't Opp. at 7:28-8:4.)  But Ms.

8   Corrigan is not offering an opinion on any of these categories.  Neuropsychologists

9   retained by both parties agree that Mr. Girardi is in fact impaired and has been for a

10  period of time.  And multiple neurologists have diagnosed Mr. Girardi with dementia.

11  Ms. Corrigan's opinion is that Mr. Girardi appears incapable of assisting in his defense.

12  As an experienced criminal defense practitioner who has defended clients charged with

13  similar crimes, she, more than a neuropsychologist with no legal background—

14  especially one who did not even bother to solicit counsel's observations—knows what

15  is required of a client to meaningfully assist in his defense.  The government's claim

16  that Ms. Corrigan is somehow unqualified or cannot reliably opine on what is required

17  for a defendant to assist in his defense because she is not a medical professional should

18  be dismissed.

19         Finally, as to Ms. Corrigan's opinions about what is required of a criminal

20  defendant at each stage of the proceedings, these provide context for her ultimate

21  opinion that Mr. Girardi is unable to assist in his defense.  Explaining what is required

22  of the client at each stage of the proceeding and preparation of the defense is needed to

23  understand why Mr. Girardi cannot meet those requirements.[4]

24  //

25  //

26

27

28         [4] Even if the Court held that Ms. Corrigan could not offer expert testimony, she
    could testify about her personal observations of Mr. Girardi and his behavior as a lay
    witness.

12

## V.  CONCLUSION

For the foregoing reasons, the government's motion to exclude Ms. Corrigan's testimony should be denied.  Alternatively, Mr. Girardi would ask the Court to defer ruling on the motion until hearing testimony from the neuropsychologist and neurologist experts.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED:  June 30, 2023          By  */s/ Georgina Wakefield*

GEORGINA WAKEFIELD
CRAIG A. HARBAUGH
J. ALEJANDRO BARRIENTOS
Deputy Federal Public Defenders
Attorneys for Thomas Vincent Girardi

13