CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
CHARLES J. SNYDER (Bar No. 287246)
Email: Charles_Snyder@fd.org
SAMUEL CROSS (Bar No. 304718)
Email: Sam_Cross@fd.org
J. ALEJANDRO BARRIENTOS (Bar. No. 346676)
Email: Alejandro_Barrientos@fd.org
Deputy Federal Public Defenders
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone:  (213) 894-2854
Facsimile:  (213) 894-0081

Attorneys for Defendant
THOMAS VINCENT GIRARDI

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 2:23-cr-00047-JLS-1 |
| Plaintiff, | |
| v. | **DEFENDANT THOMAS GIRARDI'S MOTION FOR PRETRIAL RULING REGARDING JUROR QUESTIONNAIRES** |
| THOMAS VINCENT GIRARDI, | Date:          June 20, 2024 |
| Defendant. | Time:          1:30 p.m. |
| | Courtroom:   8A |
| | Time estimate: 30 minutes |

TO: UNITED STATES ATTORNEY E. MARTIN ESTRADA AND ASSISTANT UNITED STATES ATTORNEYS ALI MOGHADDAS AND SCOTT PAETTY:

PLEASE TAKE NOTICE THAT on June 20, 2024, or as soon thereafter as the matter may be heard, Defendant Thomas Vincent Girardi will and hereby does move for an order providing for the issuance of juror questionnaires. Girardi bases this motion on the attached memorandum of points and authorities, the files and records in this case, and any other argument or information the Court may consider.

1
2
3
4

The undersigned conferred with counsel for the United States regarding this Motion on April 22, 2024, in conformity with Local Civil Rule 7-3, incorporated for criminal matters by Local Criminal Rule 57-1.  The government indicated during that conference that it opposes this Motion.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED:  May 17, 2024          By  */s/ Samuel Cross*

SAMUEL O. CROSS
Attorney for Thomas Girardi

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ................................................................................................ 1

II.     ARGUMENT........................................................................................................ 3

     A.   The Pretrial Publicity Relating to this Case Demands "Great Care" During Voir Dire. ................................................................................ 3

     B.   A Jury Questionnaire is the Most Efficient Means of Determining a Juror's Exposure to Pretrial Publicity. ........................................... 8

     C.   The Trial's Subject Matter Creates "a Real Possibility of Prejudice" and Therefore Requires "Specific Voir Dire Questioning." ................ 11

III.    CONCLUSION ................................................................................................. 13

1

# <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

5
<u>Dennis v. United States</u>,
    339 U.S. 162 (1950)..........................................................................................3

6

7
<u>Paine v. City of Lompoc</u>,
    160 F.3d 562 (9th Cir. 1998) ..........................................................................9

8

9
<u>Silverthorne v. United States</u>,
    400 F.2d 627 (9th Cir. 1968) ...............................................................<u>passim</u>

10

11
<u>Skilling v. United States</u>,
    561 U.S. 358 (2010)....................................................................................9, 10

12

13
<u>United States v. Avenatti</u>,
    8:19-cr-00061-JVS (C.D. Cal. 2021) ........................................................10, 11

14

15
<u>United States v. Bonds</u>,
    No. C 07-00732 SI, 2011 WL 902207 (N.D. Cal. Mar. 14, 2011)....................11

16
<u>United States v. Dean Skelos, et al.</u>,
    1:15-cr-00317-KMW, ECF No. 329 (S.D.N.Y. 2018)......................................11

17

18
<u>United States v. Giese</u>,
    597 F.2d 1170 (9th Cir. 1979) ..................................................................3, 4, 8

19

20
<u>United States v. Polizzi</u>,
    500 F.2d 856 (9th Cir. 1974) ....................................................................3, 4, 9

21

22
<u>United States v. Robert Menendez, et al.</u>,
    2:15-cr-00155-WHW, ECF No. 198 (D.N.J. 2017) ..........................................11

23

24
<u>United States v. Toomey</u>,
    764 F.2d 678 (9th Cir. 1985) ..................................................................12, 13

25

26

27

28

iv

1

**Other Authorities**

2

Alexandra Del Rosario, Matt Hamilton and Harriet Ryan, Erika Girardi
   lost $750,000 earrings in latest legal battle with estranged husband,
   L.A. Times (June 3, 2022), https://www.latimes.com/entertainment-
   arts/tv/story/2022-06-30/erika-girardi-loses-diamond-earrings-tom-
   girardi-divorce .................................................................................................. 4

Bravo, Wikipedia: The Free Encyclopedia (accessed May 8, 2024),
   https://en.wikipedia.org/wiki/Bravo_(American_TV_network ......................... 5

Grand Jury Charges Disbarred Plaintiffs' Lawyer Tom Girardi with Wire
   Fraud for Allegedly Embezzling Over $15 Million in Client Money,
   Press Release, United States Attorney's Office for the Central District
   of California  (hereinafter "Press Release") (Feb. 1, 2023),
   https://www.justice.gov/usao-cdca/pr/grand-jury-charges-disbarred-
   plaintiffs-lawyer-tom-girardi-wire-fraud-allegedly ............................................. 1

Harriet Ryan, Fragile-looking Tom Girardi appears at court hearing
   regarding competency to stand trial, L.A. Times (Aug. 23, 2023),
   https://www.latimes.com/california/story/2023-08-23/a-fragile-looking-
   girardi-in-court-judge-to-decide-if-dementia-too-severe-to-stand-trial .............. 4

Harriet Ryan, Girardi judge cites calls with Erika Jayne, ugly sweater in
   competency ruling, L.A. Times (Jan. 6, 2024),
   https://www.latimes.com/california/story/2024-01-06/judge-cites-
   girardis-conversations-with-erika-jayne-ugly-sweater-as-evidence-of-
   competency ........................................................................................................ 2

Harriet Ryan and Matt Hamilton, Vegas parties, celebrities and boozy
   lunches: How legal titan Tom Girardi seduced the State Bar, L.A.
   Times (Mar. 6, 2021), https://www.latimes.com/california/story/2021-
   03-06/how-california-state-bar-enabled-tom-girardi ............................................ 5

List of The Real Housewives of Beverly Hills episodes, Wikipedia:  The
   Free Encyclopedia (accessed May 8, 2024),
   https://en.wikipedia.org/wiki/List_of_The_Real_Housewives_of_Bever
   ly_Hills_episodes................................................................................................ 7

Los Angeles Times, Wikipedia:  The Free Encyclopedia (accessed May 8,
   2023), https://en.wikipedia.org/wiki/Los_Angeles_Times .................................. 2

v

The Real Housewives, Wikipedia: The Free Encyclopedia (accessed May 8, 2024), https://en.wikipedia.org/wiki/The_Real_Housewives ........................ 6

The Real Housewives of Beverly Hills, Wikipedia: The Free Encyclopedia (accessed May 8, 2024), https://en.wikipedia.org/wiki/The_Real_Housewives_of_Beverly_Hills ............ 6

Matt Hamilton, IMDb (accessed May 8, 2024), https://www.imdb.com/name/nm15826222 ...................................... 2

Matt Hamilton and Harriet Ryan, Tom Girardi, disgraced L.A. lawyer and 'Real Housewives' spouse, indicted on fraud charges, L.A. Times (Feb. 1, 2023), https://www.latimes.com/california/story/2023-02-01/tom-girardi-indictment-la-lawyer ................................................................. 1

Matt Hamilton and Harriet Ryan, The legal titan and the 'Real Housewife': The rise and fall of Tom Girardi and Erika Jayne, L.A. Times (Dec. 17, 2020), https://www.latimes.com/california/story/2020-12-17/tom-girardi-erika-jayne-rhobh-divorce ................................... 6, 7

Read the charges against Tom Girardi, disgraced lawyer and 'Real Housewives' spouse, L.A. Times (Feb. 1, 2023), https://www.latimes.com/california/story/2023-02-01/read-the-charges-against-tom-girardi ......................................................................... 4

Matt Hamilton, Tom Girardi left dozens of voicemails for The Times and a reporter investigating him. Was it a ploy?, L.A. Times (Feb. 12, 2024), https://www.latimes.com/california/story/2024-02-12/tom-girardi-left-dozens-of-voicemails-for-a-reporter-investigating-him-was-it-a-ploy ............... 2

Harriet Ryan and Matt Hamilton, State Bar casts doubts on Girardi's Alzheimer's diagnosis, suggests charges are coming, L.A. Times (Mar. 12, 2021), https://www.latimes.com/california/story/2021-03-12/california-bar-cast-doubts-on-tom-girardis-alzheimers-diagnosis-suggests-charges-coming....................................................... 4

Matt Hamilton and Harriet Ryan, Tom Girardi curses at prosecutor as judge weighs the ex-attorney's competency to stand trial, L.A. Times (Sept. 13, 2023), https://www.latimes.com/california/story/2023-09-13/tom-girardi-utters-f-you-to-federal-prosecutor-as-judge-weighs-competency-to-stand-trial ......................................................... 4

vi

Sara Kropf, _The Department of Justice Office of Public Affairs is Not Doing Its Job_, Kropf Moseley (Apr. 2, 2024), https://kmlawfirm.com/2024/04/02/the-department-of-justice-office-of-public-affairs-is-not-doing-its-job ........................................................1

_Unethical lawyers should be reported_, The Orange County Register (Jan. 3, 2023), https://www.ocregister.com/2023/01/03/unethical-lawyers-should-be-reported ........................................................5

Lydia Saad, _Retail, Pharmaceutical Industries Slip in Public Esteem,_ Gallup (Sept 13, 2023), https://news.gallup.com/poll/510641/retail-pharmaceutical-industries-slip-public-esteem.aspx?version=print ...................12

_State Bar of California Releases Reports Detailing Past Unethical Conduct in Handling Girardi Complaints_, The State Bar of California (Mar. 10, 2023), https://www.calbar.ca.gov/About-Us/News/News-Releases/state-bar-of-california-releases-reports-detailing-past-unethical-conduct-in-handling-girardi-complaints ............................................12

Stephanie Van Schilt, _From Andy Cohen to Real Housewives and beyond: a beginner's guide to the Bravo universe_, The Guardian (Jan. 17, 2023), https://www.theguardian.com/tv-and-radio/2023/jan/18/from-andy-cohen-to-real-housewives-and-beyond-a-beginners-guide-to-the-bravo-universe ........................................................6

1

## I.    INTRODUCTION

2        On January 31, 2023, the government indicted Tom Girardi, owner of the Girardi

3   Keese law firm in Los Angeles, and codefendant Christopher Kamon, longtime CFO of

4   Girardi Keese, alleging the two had conspired for years to steal client money.  Girardi's

5   indictment was widely reported and discussed, especially in Los Angeles, because

6   Girardi had been for a half century a famous plaintiff's attorney in the city, and his

7   downfall had all the newsworthy elements of both a tragedy and a scandal—as

8   trumpeted by none other than the prosecution team and its front office.

9        The day after the indictment, the United States Attorney's Office for the Central

10  District of California issued a 1,150-word press release describing Girardi as a "a once-

11  powerful figure in California's legal community."[1]  Special Agent in Charge Tyler

12  Hatcher of the IRS Criminal Investigation's Los Angeles Field Office opined for the

13  press release that Girardi "should have been a pillar to our community."[2]  United States

14  Attorney Martin Estrada held a press conference, crowing that "Mr. Girardi was widely

15  celebrated for being a champion of those fighting against corporations, but our

16  investigation has revealed that, in fact, Mr. Girardi was robbing and stealing from those

17  people[.]"[3]  If nothing else, the government was correct that this was big news.

18       The Los Angeles Times ("the Times") agreed, and not just because of Girardi's

19  stature in the legal community.[4]  Tom Girardi's wife, Erika Girardi, had been since

20

_____

21       [1] <u>Grand Jury Charges Disbarred Plaintiffs' Lawyer Tom Girardi with Wire Fraud
for Allegedly Embezzling Over $15 Million in Client Money</u>, Press Release, United

22  States Attorney's Office for the Central District of California  (hereinafter "Press
Release") (Feb. 1, 2023), https://www.justice.gov/usao-cdca/pr/grand-jury-charges-

23  disbarred-plaintiffs-lawyer-tom-girardi-wire-fraud-allegedly.  Line prosecutors
generally author their own press releases and submit them for internal approval and

24  publication.  <u>See</u> Sara Kropf, <u>The Department of Justice Office of Public Affairs is Not
Doing Its Job</u>, Kropf Moseley (Apr. 2, 2024), https://kmlawfirm.com/2024/04/02/the-

25  department-of-justice-office-of-public-affairs-is-not-doing-its-job.

26       [2] Press Release.

27       [3] Matt Hamilton and Harriet Ryan, <u>Tom Girardi, disgraced L.A. lawyer and 'Real
Housewives' spouse, indicted on fraud charges</u>, L.A. Times (Feb. 1, 2023),
https://www.latimes.com/california/story/2023-02-01/tom-girardi-indictment-la-lawyer.

28       [4] The Times has published no fewer than 42 separate articles about Girardi since
his indictment, as revealed by a name search in newspapers.com, which the Times uses
to archive its print content.  Archive Home, newspapers.com (search conducted May 8,

2015 a major character on Bravo's show <u>The Real Housewives of Beverly Hills</u> ("<u>Housewives</u>").  Her public separation from Tom Girardi, and the couple's mounting legal troubles, became a major topic on the show from its eleventh season onwards, and continued to feature in various spinoff projects and shows, including a two-part documentary series, <u>The Housewife and the Hustler</u>, which focused explicitly on the couple's legal troubles.  The Times has continued to cover both Tom Girardi and his now-estranged wife in close detail.[5]  Indeed, the newspaper, whose print and digital circulation numbers near a quarter of a million, has done what it can to contribute to the sensation and publicity surrounding the case.[6]

This Court should issue a questionnaire containing substantive questions relating to jurors' media exposure and potential biases.  The pretrial publicity surrounding Girardi, his wife, the case, his career, and his various legal matters requires sequestered questioning of individual jurors.  The case's high profile demands intensive voir dire one way or another, and a questionnaire will achieve this goal efficiently, saving the Court and the parties time by significantly shortening in-courtroom voir dire.

//

//

2024), https://latimes.newspapers.com/search/?date-end=2024-05-08&date-start=2023-02-01&keyword=Girardi.  He made the front page on the Friday after his arrest.  <u>Id.</u>, https://latimes.newspapers.com/image/924475624/?match=1&terms=Girardi.

[5] <u>See, e.g.</u>, Harriet Ryan, <u>Girardi judge cites calls with Erika Jayne, ugly sweater in competency ruling</u>, L.A. Times (Jan. 6, 2024), https://www.latimes.com/california/story/2024-01-06/judge-cites-girardis-conversations-with-erika-jayne-ugly-sweater-as-evidence-of-competency.

[6] <u>See</u> <u>Los Angeles Times</u>, Wikipedia:  The Free Encyclopedia (accessed May 8, 2023), https://en.wikipedia.org/wiki/Los_Angeles_Times (reflecting print circulation of 142,382 as of 2022, and digital circulation of 105,000 as of 2018); Matt Hamilton, <u>Tom Girardi left dozens of voicemails for The Times and a reporter investigating him.  Was it a ploy?</u>, L.A. Times (Feb. 12, 2024), https://www.latimes.com/california/story/2024-02-12/tom-girardi-left-dozens-of-voicemails-for-a-reporter-investigating-him-was-it-a-ploy.  Hamilton himself appeared in <u>The Housewife and the Hustler 2:  The Reckoning</u>. <u>See</u> <u>Matt Hamilton</u>, IMDb (accessed May 8, 2024), https://www.imdb.com/name/nm15826222/.

1

## II.    ARGUMENT

2 **A. The Pretrial Publicity Relating to this Case Demands "Great Care" During**

3 **Voir Dire.**

4        "[W]hen pretrial publicity is great, the trial judge must exercise correspondingly

5 great care in all aspects of the case relating to publicity which might tend to defeat or

6 impair the rights of an accused."  Silverthorne v. United States, 400 F.2d 627, 637–38

7 (9th Cir. 1968).  "[T]he trial judge has a large discretion in ruling on the issue of

8 prejudice resulting from the reading by jurors of news articles concerning the trial."  Id.

9 at 637.  "But discretion is not a substitute for duty . . . ."  Id.  "In exercising its

10 discretion, the trial court must be zealous to protect the rights of an accused."  Dennis

11 v. United States, 339 U.S. 162, 168 (1950); see also United States v. Polizzi, 500 F.2d

12 856, 879 (9th Cir. 1974) ("An accused has an unquestioned right to have jurors decide

13 his guilt or innocence who are not biased by what has appeared in the media.").

14        In circumstances involving "voluminous publicity," the district court should

15 "(make) a careful, individual examination of each of the jurors involved, out of the

16 presence of the remaining jurors, as to the possible effect of the [media exposure]."

17 Silverthorne, 400 F.2d at 639 (quoting Coppedge v. United States, 272 F.2d 504, 508

18 (D.C. Cir. 1959)); see also United States v. Giese, 597 F.2d 1170, 1183 (9th Cir. 1979)

19 (explaining that significant pretrial publicity requires "a careful, individual examination

20 of each prospective juror, preferably out of the presence of the other jurors").  "The

21 voir dire 'must not simply call for the jurors' subjective assessment of their own

22 impartiality, and it must not be so general that it does not adequately probe the

23 possibility of prejudice.'"  Giese, 597 F.2d at 1183 (quoting Polizzi, 500 F.2d at 879).

24 "A general question directed to the entire group of prospective jurors is inadequate."

25

26

27

28

Id.[7]

The massive media scrutiny surrounding this case and Girardi's personal life and legal troubles more broadly is sufficiently "voluminous" to demand "great care" during voir dire.  Silverthorne, 400 F.2d at 637, 639.  The case has been extensively covered by the Times, which reaches more than 40 million unique online visitors each month.[8] The Times covered Girardi's initial indictment in 2023,[9] the minutiae of his in-court behavior at competency proceedings,[10] his apparent physical and mental health at these proceedings,[11] the disbarment proceedings that preceded the indictment,[12] and Erika Girardi's ongoing divorce proceedings with Tom Girardi.[13]  The Times published many articles on Girardi's long history of fame and legal success, his close relationship with

---

[7] Circumstances in which "few jurors have any knowledge of the case" do not require such intensive procedures.  See Giese, 597 F.2d at 1185; Polizzi, 500 F.2d at 880 (holding pretrial publicity "was not substantial enough to have required the trial judge to interrogate the prospective jurors at length about it").

[8] About the Los Angeles Times, L.A. Times, https://www.latimes.com/about#nt=navsub0-nav23 (visited May 8, 2024)

[9] Read the charges against Tom Girardi, disgraced lawyer and 'Real Housewives' spouse, L.A. Times (Feb. 1, 2023), https://www.latimes.com/california/story/2023-02-01/read-the-charges-against-tom-girardi.

[10] Matt Hamilton and Harriet Ryan, Tom Girardi curses at prosecutor as judge weighs the ex-attorney's competency to stand trial, L.A. Times (Sept. 13, 2023), https://www.latimes.com/california/story/2023-09-13/tom-girardi-utters-f-you-to-federal-prosecutor-as-judge-weighs-competency-to-stand-trial.

[11] Harriet Ryan, Fragile-looking Tom Girardi appears at court hearing regarding competency to stand trial, L.A. Times (Aug. 23, 2023), https://www.latimes.com/california/story/2023-08-23/a-fragile-looking-girardi-in-court-judge-to-decide-if-dementia-too-severe-to-stand-trial.

[12] Harriet Ryan and Matt Hamilton, State Bar casts doubts on Girardi's Alzheimer's diagnosis, suggests charges are coming, L.A. Times (Mar. 12, 2021), https://www.latimes.com/california/story/2021-03-12/california-bar-cast-doubts-on-tom-girardis-alzheimers-diagnosis-suggests-charges-coming.

[13] Alexandra Del Rosario, Matt Hamilton and Harriet Ryan, Erika Girardi lost $750,000 earrings in latest legal battle with estranged husband, L.A. Times (June 3, 2022), https://www.latimes.com/entertainment-arts/tv/story/2022-06-30/erika-girardi-loses-diamond-earrings-tom-girardi-divorce.

4

the State Bar of California, and the collapse of Girardi Keese.[14]  A Google search of the Times's website for the terms "Girardi" and "scandal" returns "[a]bout 370 results."[15]

Other Los Angeles-area newspapers have also covered Girardi and the case extensively.  The Orange County Register, which claims to have about five million monthly readers, has published approximately 329 articles mentioning Girardi, including a January 2023 editorial that treated Girardi as the most well-known emblem of the moral rot engulfing California's legal profession.[16]  The Los Angeles Daily News, which claims to have 1.5 million monthly readers, also continues to cover Girardi and the case extensively, with its website listing 421 such articles.[17]

Outside of the notoriety arising directly from the trial and Girardi's legal career, many potential jurors will know of and have strong opinions about Girardi because of his wife's decade-long preeminence on Housewives and other related media. Housewives airs on Bravo, a basic-cable television network that reaches 77% of American households with television.[18]  In recent years, Bravo has successfully promoted a brand focused on reality content that encourages viewers to form parasocial relationships with the subjects of its shows, and often cross-promotes those subjects in different properties owned by the network.

---

[14] See, e.g., Harriet Ryan and Matt Hamilton, Vegas parties, celebrities and boozy lunches: How legal titan Tom Girardi seduced the State Bar, L.A. Times (Mar. 6, 2021), https://www.latimes.com/california/story/2021-03-06/how-california-state-bar-enabled-tom-girardi.

[15] The search was conducted on May 8, 2024, with the input:  "site:latimes.com girardi AND scandal."  In Silverthorne, the Ninth Circuit noted that the San Francisco Bay area was "saturated with more than 300 articles" during the year before trial. 400 F.2d at 631.  "Words such as 'political donations', 'scandal', 'perjury', 'million dollar losses', etc. commonly appeared."  Id. at 631 n.4.

[16] Search results for "Girardi," The Orange County Register (search conducted May 8, 2024), https://www.ocregister.com/?s=girardi&orderby=date&order=desc; Unethical lawyers should be reported, The Orange County Register (Jan. 3, 2023), https://www.ocregister.com/2023/01/03/unethical-lawyers-should-be-reported.

[17] Search results for "Girardi,"  Los Angeles Daily News (search conducted May 8, 2024), https://www.dailynews.com/?s=girardi&orderby=date&order=desc.

[18] Bravo, Wikipedia:  The Free Encyclopedia (accessed May 8, 2024), https://en.wikipedia.org/wiki/Bravo_(American_TV_network).

More than 40 years into its existence, the NBCUniversal-owned channel has become something of a phenomenon, with a "Bravoverse" that mostly comprises unscripted reality shows.  Host and producer Andy Cohen is its most recognisable figurehead, and The Real Housewives is its most prolific format:  a franchise that follows a mix of affluent women in cities across the US[.][19]

Housewives sits at the center of Bravo's brand universe, one of 11 other "Real Housewives" shows, which together have spawned 27 spinoff series of different kinds.[20]  Erika Girardi has been a major character on Housewives since the show's sixth season aired in 2015.[21]  After episodes air, they are dissected and discussed in an array of meta-media, including "live response" shows like Watch What Happens Live With Andy Cohen (also on Bravo), and podcasts, YouTube videos, cultural commentary publications, and fan-created materials.[22]

Tom and Erika Girardi, who married in 2000, were depicted on Housewives, and media that covered Housewives, as a celebrity "power couple."[23]  The show depicted his support of her career, and he featured prominently in several episodes, where he was portrayed as a skilled and famous Los Angeles trial attorney. [24]  On one occasion

---

[19] Stephanie Van Schilt, From Andy Cohen to Real Housewives and beyond: a beginner's guide to the Bravo universe, The Guardian (Jan. 17, 2023), https://www.theguardian.com/tv-and-radio/2023/jan/18/from-andy-cohen-to-real-housewives-and-beyond-a-beginners-guide-to-the-bravo-universe.

[20] The Real Housewives, Wikipedia:  The Free Encyclopedia (accessed May 8, 2024), https://en.wikipedia.org/wiki/The_Real_Housewives.

[21] The Real Housewives of Beverly Hills, Wikipedia:  The Free Encyclopedia (accessed May 8, 2024), https://en.wikipedia.org/wiki/The_Real_Housewives_of_Beverly_Hills.

[22] For example, Vulture.com, a subsidiary of New York Magazine, has a running series of articles that "recap" each episode.

[23] Matt Hamilton and Harriet Ryan, The legal titan and the 'Real Housewife': The rise and fall of Tom Girardi and Erika Jayne, L.A. Times (Dec. 17, 2020), https://www.latimes.com/california/story/2020-12-17/tom-girardi-erika-jayne-rhobh-divorce.

[24] The Real Housewives of Beverly Hills:  Objection, Your Honor (Bravo broadcast March 8, 2016.

he hosted a dinner party that was the main focus of an entire episode.[25]  The average viewership of all the seasons of <u>Housewives</u> on which Erika Girardi has appeared has never dropped below one million, and has often been closer to two.[26]

As Girardi Keese began to founder, first in connection with the <u>Lion Air</u> matter, and later when it was taken into bankruptcy and Tom Girardi was indicted, the show documented Erika Girardi's behavior and reactions, including lengthy discussions of her relationship with Tom Girardi, her knowledge or lack thereof of the firm's operations, Tom Girardi's mental health, the effect on both of them of various legal proceedings, etc.[27]  The core of Erika Girardi's personal brand, and her depiction on Bravo and other media, has continued to be her relationship with Tom Girardi and the alleged fraud at the center of the instant criminal matter.  <u>See, e.g.</u>, <u>The Housewife and the Hustler</u> (2021); <u>The Housewife and the Hustler 2:  The Reckoning</u> (2024).  (Erika Girardi is the titular housewife; Tom Girardi is the purported hustler.)  In the second of these programs, Erika Girardi meets on camera with some of her husband's alleged victims, more than one of whom have been listed by the government as trial witnesses.[28]  She currently has 2.6 million followers on Instagram.

Potential jurors who would otherwise have had no awareness of Tom Girardi as a lawyer or criminal defendant will be aware of him as a figure from a beloved and extremely popular, long-running television program.  Moreover, such jurors'

---

[25] <u>Id.</u>

[26] <u>List of The Real Housewives of Beverly Hills episodes</u>, Wikipedia:  The Free Encyclopedia (accessed May 8, 2024), https://en.wikipedia.org/wiki/List_of_The_Real_Housewives_of_Beverly_Hills_episodes.

[27] <u>See, e.g.</u>, <u>The Real Housewives of Beverly Hills:  Affairs and Accidents</u> (Bravo television broadcast, July 21, 2021); <u>The Real Housewives of Beverly Hills: The Crystal Conundrum</u> (Bravo television broadcast, June 1, 2022) (containing scenes in which Erika Girardi makes multiple references to Giraridi Keese's payment or nonpayment of client funds and how much she knew about it).

[28] The government has listed Kimberly Archie, Josephina Hernandez, and Kathleen Ruigomez as trial witnesses, all of whom appear in <u>The Housewife and the Hustler 2:  The Reckoning</u>.

7

impression of Tom Girardi is likely to be highly negative, based on the light in which he is now depicted in the various media that orbit his estranged wife.  The risk of bias is particularly great given the stylized and abbreviated way in which Tom Girardi is depicted in the "Bravoverse" and its spinoffs:  at first, as a forbidding legal "titan,"[29] then later as a "hustler," whose wealth was supposedly obtained by a series of frauds his wife can only expiate by her continuing televised contrition.

There is also a significant risk that jurors will have read about the Court's highly-publicized finding that Girardi is malingering to avoid trial, and will draw strong negative conclusions about him on this basis.  Potential jurors who know about the Court's finding will hold it against Girardi.  In addition, such potential jurors will be prejudiced against and less likely to credit evidence or argument Girardi offers about his mental state at the time of the alleged offenses.  A questionnaire will efficiently determine whether a given potential juror knows about the Court's finding, and what kind of prejudice Girardi may have suffered in the mind of the juror.

## B. A Jury Questionnaire is the Most Efficient Means of Determining a Juror's Exposure to Pretrial Publicity.

Due to this "voluminous publicity," individual, sequestered questioning of jurors in the venire is required to protect Girardi's Fifth and Sixth Amendment rights.  See Silverthorne, 400 F.2d at 639; Giese, 597 F.2d at 1183.  Although a juror may say in a full courtroom "that he would be fair and impartial . . . the psychological impact requiring such a declaration before one's fellows is often its father."  Silverthorne, 400 F.2d at 639 (quoting Irvin v. Dowd, 366 U.S. 717, 728 (1961)).  This is particularly so in this case, where jurors' pre-existing bias may well stem from pop culture ephemera that jurors themselves will be reluctant to discuss or explain as having influenced them with the complete candor required in voir dire.  So too, jurors may be reluctant to express their opinions about trial lawyers and the general moral probity of trial lawyers

---

[29] Real Housewives:  Objection, Your Honor.

8

1   under questioning by trial lawyers, in a highly publicized setting, about a highly

2   publicized attorney.

3          Additionally, the voir dire questions must be specific and elicit answers that

4   permit "objectively assessing the impact caused by . . . pretrial knowledge on the

5   juror's impartiality."  Silverthorne, 400 F.2d at 638 ("[T]he entire voir dire examination

6   was too general to adequately probe the prejudice issue.").  Questions that call upon a

7   juror "to assess their own impartiality" are insufficient.  Id.; see also id. at 639

8   ("[W]hether a juror can render a verdict based solely on evidence adduced in the

9   courtroom should not be adjudged on that juror's own assessment of self-righteousness

10  without something more.");  Polizzi, 500 F.2d at 879 (similar).

11         In light of the particular care that must be taken during voir dire, a jury

12  questionnaire provides the most efficient means of quickly and effectively probing

13  potential prejudices.  Rather than call jurors to the bench one by one, a questionnaire

14  permits the Court to question the entire venire simultaneously, while also obtaining

15  individual answers from each juror in a private setting.  Although live voir dire will

16  nonetheless be required, the questionnaire will drastically reduce the time needed to

17  speak with jurors individually and assist in "enabling the parties intelligently to

18  exercise their challenges."  See Paine v. City of Lompoc, 160 F.3d 562, 564 (9th Cir.

19  1998).

20         Substantive jury questionnaires are regularly used in highly publicized cases.

21  The Supreme Court approved of the trial court's use of a jury questionnaire in a case

22  related to the Enron scandal, as well as follow up questions in the courtroom, to address

23  the "widespread community impact" of the defendant's alleged actions.  Skilling v.

24  United States, 561 U.S. 358, 384 (2010).  The Court noted that the impact of Enron's

25  collapse "necessitated careful identification and inspection of prospective jurors'

26  connections to Enron," and that the questionnaire and follow-up "were well suited to

27  that task."  Id.  The questionnaire "helped to identify prospective jurors excusable for

28

9

cause and served as a springboard for further questions put to remaining members of the array." Id. at 388.  The district court also "examined each prospective juror individually, thus preventing the spread of any prejudicial information to other venire members."  Id. at 389 (citing Mu'Min v. Virginia, 500 U.S. 415, 425 (1991)).

Notably, this Court approved the use of a jury questionnaire, by the parties' stipulation, in United States v. Beal, 8:19-cr-47-JLS.  See Beal, ECF Nos. 360, 361, 385.  Beal was alleged to have killed his ex-girlfriend using a bomb in 2018.  Id., ECF No. 14.  Beal was not otherwise, before his trial, a public figure, unlike Girardi, who, as detailed above, has directly and indirectly been the focus of mass media attention and publicity for various overlapping reasons for decades.  It is difficult to see a reason not grounded in purely strategic considerations that warrants the difference between the government's stance in Beal and Girardi.

The government similarly stipulated to administration of "extensive [juror] questionnaires" in the criminal trial in the Central District of California of Michael Avenatti.  Apr. 8, 2021 Minute Entry, United States v. Avenatti, 8:19-cr-00061-JVS (C.D. Cal. 2021).  This recent case bore many similarities to Girardi's.  Avenatti was charged with, inter alia, wire fraud, on a virtually identical theory of withholding client settlement funds.[30]  Avenatti, like Girardi, was a plaintiff's lawyer well known in and outside the legal community prior to his indictment, and gathered more notoriety by being indicted.  And the parties understood the combination of Avenatti's pretrial

---

[30] Compare Indictment ¶ 2, ECF No. 1 ("[D]efendants GIRARDI and KAMON, together with others known and unknown to the Grand Jury, knowingly and with intent to defraud, devised, participated in, and executed a scheme to defraud victim clients to whom defendant GIRARDI and Girardi Keese had agreed to provide legal services . . . as to material matters, and to obtain money and property from such victim clients by means of material false and fraudulent pretenses, representations, and promises, and the concealment of material facts, including material facts that defendant GIRARDI had a duty to disclose."), with Indictment ¶ 6, Avenatti, 8:19-cr-00061-JVS, ECF No. 16 ("defendant AVENATTI, knowingly and with intent to defraud, devised, participated in, and executed a scheme to defraud victim-clients to whom defendant AVENATTI had agreed to provide legal services . . . money and property from such victim-clients by means of material false and fraudulent pretenses, representations, and promises, and the concealment of material facts that defendant AVENATTI had a duty to disclose.").

10

publicity with his profession and the inflammatory nature of the allegations warranted a questionnaire.  See, e.g., Avenatti Questionnaire, Question # 32, Avenatti, 8:19-cr-00061-JVS, ECF No. 543 ("Mr. Avenatti is a civil trial lawyer who sues individuals and corporations. Would you give greater or lesser weight to the evidence in the case simply because he is a lawyer?").  Avenatti's pretrial notoriety in the Los Angeles area is comparable with Girardi's (although unlike Girardi, Avenatti had not been a fixture of the local legal and political landscape for the previous half-century).[31]  A juror questionnaire was appropriately administered to prospective jurors in Avenatti's case, and it is appropriate to administer one to Girardi's prospective jurors.

Courts frequently employ jury questionnaires for these and related reasons in cases involving celebrities, individuals who were well known before their cases arose, and individuals whose cases have created or extended some degree of notoriety.  See, e.g., United States v. Dean Skelos, et al., 1:15-cr-00317-KMW, ECF No. 329 (S.D.N.Y. 2018) (using jury questionnaire in trial of former Majority Leader of the New York State Senate);  United States v. Robert Menendez, et al., 2:15-cr-00155-WHW, ECF No. 198 (D.N.J. 2017) (using questionnaire in trial of sitting U.S. senator);  United States v. Bonds, No. C 07-00732 SI, 2011 WL 902207, at *5 (N.D. Cal. Mar. 14, 2011) ("The Court notes first that this is a very high profile case.  Defendant is a local celebrity who played for the San Francisco Giants from 1993 until 2007, during which time he was very successful on the field.").

**C. The Trial's Subject Matter Creates "a Real Possibility of Prejudice" and Therefore Requires "Specific Voir Dire Questioning."**

The subject-matter of the case also requires specific attention during voir dire. The Ninth Circuit has noted that

_____

[31] For comparison, a name-search of the Times website conducted with Google using the search string "site:latimes.com 'tom girardi'" returns" "[a]bout 1,870 results." A name-search of the Times website conducted with Google using the search string "site:latimes.com 'michael avenatti'" returns "[a]bout 637 results."  Both searches were conducted on May 13, 2024.

11

there is a real possibility of prejudice and a consequent need for specific voir dire questioning: . . . when the case "involves other matters concerning which either the local community or the population at large is commonly known to harbor strong feelings that may stop short of presumptive bias in law yet significantly skew deliberations in fact" . . . .

United States v. Toomey, 764 F.2d 678, 682 (9th Cir. 1985) (quoting United States v. Jones, 722 F.2d 528, 529–30 (9th Cir. 1983) (per curiam)).  Here, the trial will deal with matters about which the population at large is commonly known to harbor strong feelings.

The community of both Los Angeles and California is likely to harbor very strong feelings about Girardi, and specifically about lawyers who engage in the kind of crimes he is alleged to have committed.  Lawyers as such are perennially unpopular amongst the general public, because they are perceived as dishonest and greedy; in 2023, a national poll showed "the legal field" was seen unfavorably by 44% of respondents, making it less unpopular as a field only than the oil and gas industry, the federal government, and "big pharma."[32]  In California, Girardi is likely to be a lightning rod for such negative sentiment, both because he was and is a prominent member of the profession, and because of the allegations surrounding his firm and the State Bar Association.[33]

The government's case in chief, of course, will focus on similar allegations, and

---

[32] See Lydia Saad, Retail, Pharmaceutical Industries Slip in Public Esteem, Gallup (Sept 13, 2023), https://news.gallup.com/poll/510641/retail-pharmaceutical-industries-slip-public-esteem.aspx?version=print.

[33] State Bar of California Releases Reports Detailing Past Unethical Conduct in Handling Girardi Complaints, The State Bar of California (Mar. 10, 2023), https://www.calbar.ca.gov/About-Us/News/News-Releases/state-bar-of-california-releases-reports-detailing-past-unethical-conduct-in-handling-girardi-complaints ("Together, the two reports provide a clear and comprehensive review of how Girardi's unethical and unacceptable behavior went unchecked for so long and reveal systemic organizational dysfunction that persisted for many years and through many changes of leadership.").

seek to portray Girardi in just the light that various now-penitent regulatory agencies presently do.  Many jurors may take the view that lawyers' corruption simply cannot be regulated and the public cannot be protected from it, because agencies like the State Bar are staffed largely by lawyers.  <u>See, e.g.</u> <u>Unethical Lawyers Should Be Reported</u> ("So, while we certainly support the new bill mandating reporting of misconduct, clearly there has to be more oversight of the State Bar itself. Because the California Supreme Court oversees the bar, and it has dropped the ball as well.").  Such bias could easily cause a juror to hold Girardi accountable for the sins of his profession as their most visible and proximate exemplar.  For this reason, there is "a real possibility of prejudice and a consequent need for specific voir dire questioning."  <u>Toomey</u>, 764 F.2d at 682.

A jury questionnaire provides the most efficient method of addressing these sensitive topics in a streamlined and private fashion.

### III.   CONCLUSION

For these reasons, Girardi respectfully requests that the Court direct the parties immediately meet and confer and submit a follow-up filing listing (1) proposed voir dire questions the parties agree on, (2) questions proposed by the defense but opposed by the government, and (3) questions proposed by the government but opposed by the defense.  The Court should thereafter administer a jury questionnaire based on the parties' submissions.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED:  May 17, 2024          By  */s/ Samuel Cross*

SAMUEL O. CROSS
Attorney for Thomas Girardi

13

## **CERTIFICATE OF COMPLIANCE**

I, the undersigned, counsel of record for Defendant Thomas Girardi, certify that this brief contains approximately 4,275 words, which complies with the word limit of Civil L.R. 11-6.1, incorporated by reference into the local rules for criminal cases by L.Cr.R. 57-1, as well as this Court's standing order regarding criminal cases. Counsel relies on the word count of the computer program used to prepare this brief (Microsoft Word).

DATED: May 17, 2024                    _____*/s/ Samuel Cross*_____

                                                 SAMUEL CROSS
                                                 Deputy Federal Public Defender