Michael V. Severo, Esq. (SBN.: 072599)
**THE SEVERO LAW FIRM**
301 N. Lake Avenue, Suite 315
Pasadena, CA 91101
(626)844-6400
msevero@mvslaw.com

Attorneys for Defendant,
 CHRISTOPHER KAMON

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>Vs.<br><br>CHRISTOPHER KAMON,<br><br>    Defendant. | Case No.  23-CR-00047-JLS<br><br>**DEFENDANT CHRISTOPHER KAMON'S NOTICE OF MOTION AND MOTION FOR A PRETRIAL ORDER EXCLUDING EVIDENCE OF OTHER ACTS UNDER FED.R.EV. 404(b); MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Trial Date:  August 6, 2024<br><br>Hearing Date:  June 20, 2024<br>Hearing Time:  1:30 p.m.<br>Courtroom 8A, Hon. Josephine Staton<br>Time Estimate:  30 minutes |

**TO ALL INTERESTED PARTIES:**

 **NOTICE IS HEREBY GIVEN** that on June 20, 2024, at 1:30 p.m., or as soon thereafter as counsel may be heard, in Courtroom 8A of U.S. District Court for the Central District of California, located at 350 W. First Street, Los Angeles, CA 90012, Defendant CHRISTOPHER KAMON will and does hereby move this honorable for an order excluding all evidence of uncharged conduct sought to be admitted in this case but which pertain to allegations of wire fraud in a separately charged case, 23-CR-0024-JLSj, and which are not logically connected to the offenses charged.

This motion is made upon the grounds that the evidence proffered is inadmissible because **(1)** it is not "inextricably intertwined" with the charged crimes in that it is neither (a) an integral or natural part of a single criminal transaction nor (b) is it necessary to render the prosecutors' story of the crime coherent and comprehensive; **(2)** the proffered evidence is not offered for any permissible purpose under Fed.R.Ev., Rule 404(b) and is intended only to show that the defendant acted in conformity with his bad character and is prohibited from use by the provisions of Fed.R.Ev. Rule 404(b)(1); and **(3)** as provided by Fed.R.Ev., Rule 403, the probative value of the proffered evidence is outweighed by its prejudicial effect, undue consumption of time, confusion of issues and likelihood of misleading the jury; and **(4)** upon such other grounds as hereinafter set forth.

This motion is based upon this notice, the annexed memorandum of points and authorities, all other papers and pleadings on file in this action and any other oral or documentary evidence that may be adduced at the hearing on the motion.

Dated: May 23, 2024                                     THE SEVERO LAW FIRM

                                                        By    /s/ *Michael V. Severo*
                                                        Michael V. Severo
                                                        Attorney for Defendant
                                                        CHRISTOPHER KAMON

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................... 4

MEMORANDUM OF POINTS AND AUTHORITIES ....................................................... 5

INTRODUCTION ............................................................................................................... 5

DISCUSSION ...................................................................................................................... 7

    A.   The Evidence Fails To Meet The "Inextricably Intertwined" Test ........................ 7

    B.   The Evidence May Not Be Admitted Under Rule 404(b) ..................................... 11

    C.   Rule 403- The Balancing Test ............................................................................ 14

CONCLUSION .................................................................................................................. 15

# TABLE OF AUTHORITIES

**RULES**

Fed.R.Evidence, Rule 403 ................................................................................2, 7, 14, 15

Fed.R.Evidence, Rule 404 ................................................................................... passim

**U.S. COURT OF APPEALS CASES**

*U.S. v. DeGeorge* 380 F.3d 1203, 1220 (9th Cir. 2004)..............................................8, 10

*U.S. v. Dorsey*, 677 F.3d 944 (9th Cir. 2012) ...............................................................8, 10

*U.S. v. Lillard*, 354 F.3d 850, 854 (9th Cir.2003) ..............................................................10

*U.S. v. Miller*, 953 F.3d 395 (9th Cir. 2018) ......................................................................14

*U.S. v. Montgomery,* 150 F.3d 983, 1000-01 (9th Cir. 1998)............................................14

*U.S. v. Vizcarra-Martinez,* 66 F.3d 1006, 1012 (9th Cir. 1995)...................................... 8, 9

*U.S. v. Vo*, 413 F.3d 1010, 1017 (9th Cir. 2010) ..............................................................12

*United States v. Cox*, 963 F.3d 915 (9th Cir. 2020) .........................................................14

*United States v. Gorman*, 613 F.3d 711, 719 (7th Cir. 2010).............................................10

*United States v. Green*, 617 F.3d 233, 245 (3d Cir.) ......................................................... 8

*United States v. Jimenez-Chaidez,* 96 F.4th 1257 (9th Cir. 2024) ..........................7, 12, 13

*United States v. Loftis*, 843 F.3d 1173, 1178 (9th Cir. 2016)........................................11, 14

*United States v. Soliman,* 813 F.2d 277, 278 (9th Cir.1987)............................................... 8

*United States v. Williams*, 989 F.2d 1061, 1070 (9th Cir.1993) ......................................... 8

**U.S. DISTRICT COURT CASES**

*U.S. v. Garcia*, 730 F.Supp.2d 1159 (C.D.Cal. 2010).......................................................14

THE SEVERO LAW FIRM
301 N. LAKE AVENUE, STE. 315 ♦ PASADENA, CA 91101

# **MEMORANDUM OF POINTS AND AUTHORITIES**

## **INTRODUCTION**

On January 31, 2023, the Government filed an indictment against Thomas V. Girardi ("Girardi) and CHRISTOPHER KAMON ("KAMON").

Girardi is a former lawyer who was prominent in the area of personal injury law, specifically catastrophic injuries including mass torts. He practiced law under the rubric of "Girardi & Keese" (hereafter "GK"). KAMON is alleged to have been the head of accounting at GK. GK employed several lawyers and support staff.

In this case, KAMON is alleged to "knowingly and with intent to defraud, devised, participated in, and executed a scheme to defraud" several clients, in violation of 18 U.S.C. 1343 (wire fraud). The Indictment is stated in five counts, representing four separate cases handled by Girardi.

Factually, the Indictment alleges that Girardi and Kamon diverted client's funds taken from the client trust account from settlements obtained by Girardi for the clients but which were not paid to them or paid by diverting funds from other clients. It states, in part, that "Client 1's" case was settled in 2013, that Girardi misrepresented the terms of the settlement to Client 1, that $28 million was deposited in Girardi's client trust account and that the funds were misappropriated in 2013. The diversion of Client 1's funds is not, however, charged in any of the counts.

Count One charges that on June 17, 2019, a $4,000,000 settlement obtained by Girardi for Client 4 and Client 5, which was deposited in the Girardi client trust account was spent for fees and costs unrelated to Client 4 and Client 5.

Count Two states that on July 1, 2019, funds were withdrawn from the Client 4 and Client 5 settlement to pay $2,500,000 to Client 1.

Count Three charges that on May 22, 2020, funds in the sum of $128,250 received from a settlement obtained by Girardi for Client 3 in October 2018, were used to pay Girardi costs and expenses unrelated to Client 3.

Count Four in essence states that Girardi settled Client 2's case for $504,400 in

April 2020. The funds were received in Girardi's client trust account in June 2020. On June 25, 2020, the sum of $ 504,400 was used to pay Girardi's costs and expenses unrelated to Client 2.

Count Five charges that on July 9, 2020, $15,000 were "wired" from the GK operating account to American Express to pay for charges incurred on a GK Corporate American Express Card (the "Corporate AmEx") issued to KAMON and that the source of the funds were the settlement proceeds belonging to Client 2.

The Government has provided notice to the defense that it intends to offer evidence that KAMON engaged in a "side fraud" by embezzling millions of dollars from the GK law firm. The allegations of the government's alleged side fraud are the subject of a separate case against KAMON only. The case is pending before this court and is numbered CR 23-00024 JLS. KAMON has pleaded not guilty and the case is presently set for trial in this court on October 22, 2024. A copy of the Government's notice is attached hereto as Exhibit A.

In this regard, the Government has listed two witnesses that are intended to testify at trial, viz., Isidro Bravo ("Bravo") and Nicole Rokita ("Rokita") and has further listed trial exhibits 331 through 341 that are intended to establish that KAMON diverted funds from GK. Copies of the pertinent trial exhibits are attached hereto and collectively marked Exhibit B.

Exhibit 331 are images of checks written to Rokita Management between June 2017 and September 2018. Exhibit 332 are images of checks written on the GK operating account between January 2018 and September 2020, payable to Bravo's Construction. Exhibit 333 through 339, inclusive, are images of purported invoices from Bravo's Construction between 2011 and 2014. Exhibit 340 appears to be a listing of amounts mostly between 2011 and 2015, as well as March through May 2019. Finally, exhibit 341 is a printout showing an apparent transfer of funds to Porsche Financial Services in the sum of $121,494.23 on August 13, 2020.

By this motion, KAMON seeks to exclude the testimony of Bravo and Rokita and

Exhibits 331 through 341 and any other evidence of uncharged conduct not related to the offenses charged in this case.

## DISCUSSION

The government's proffered evidence is strictly confined to allegations that KAMON embezzled GK's funds – and does not connect with the scheme allegedly concocted by Girardi to embezzle client funds. Thus, the evidence lacks relevance to prove any element of the crimes charged in the instant case.

Any evidence which suggests that KAMON embezzled funds from Girardi & Keese is improper propensity evidence – it tends to establish the government's allegations that KAMON is a thief, and thus must have been part of Girardi's scheme to embezzle funds belonging to his clients. The court may not admit evidence of a defendant's "other acts" to establish that he is "more likely guilty of the charged offense because of his past behavior." *United States v. Jimenez-Chaidez*, 96 F.4th 1257 (9th Cir. 2024).

In its notice, the Government states that the proffered evidence is "inextricably intertwined" with the charged offense, or alternatively, is offered to prove motive to commit the offense.

On both counts, the Government's position regarding admissibility of other acts evidence is wrong.

Moreover, the evidence of other acts sought to be introduced is wholly the province of the offenses charged in CR 23-00024 JLS. Essentially, by admitting the evidence the court would be inviting a side show that is the subject of a different trial. Thus, and as more particularly discussed below, the evidence is excludable under Federal Rules of Evidence, Rule 403.

A. <u>The Evidence Fails To Meet The "Inextricably Intertwined" Test</u>

In its notice, the Government first argues that the proffered evidence does not come within the ambit nor is it subject to the protections of Rule 404(b) because the evidence is inextricably intertwined with the current charges. Evidence of other

uncharged criminal acts of a defendant falls under Federal Rule of Evidence 404(b) but when the evidence offered relates to conduct that is in fact an element of the crimes charged, Rule 404(b) does not apply.

That is, there is an exception to Rule 404(b) which applies when the evidence is "intrinsic" to the charged crime. *U.S. v. Vizcarra-Martinez,* 66 F.3d 1006, 1012 (9th Cir. 1995).

Most courts today apply the "inextricably intertwined" test in order to determine whether evidence is intrinsic. The inextricably intertwined standard varies widely among the circuit courts of appeals. *United States v. Green*, 617 F.3d 233, 245 (3d Cir.).

"The policies underlying rule 404(b) are inapplicable when offenses committed as part of a 'single criminal episode' become other acts simply because the defendant 'is indicted for less than all of his actions." *United States v. Williams*, 989 F.2d 1061, 1070 (9th Cir.1993), quoting *United States v. Soliman,* 813 F.2d 277, 278 (9th Cir.1987).

It is worth noting that the notion that offenses may be admitted as being inextricably intertwined with the current offense has been severely criticized as "elastic and inviting abuse." See *Green,* supra.

Notwithstanding the criticism, the Ninth Circuit has recognized two categories of evidence that may be considered "inextricably intertwined" with a charged offense and therefore admitted without regard to Rule 404(b). *See United States v. Vizcarra– Martinez,* supra at 1012. "First, evidence of prior acts may be admitted if the evidence "constitutes a part of the transaction that serves as the basis for the criminal charge. Second, prior act evidence may be admitted when it was necessary to do so in order to permit the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime." *U.S. v. DeGeorge* (9th Cir. 2004) 380 F.3d 1203, 1220; See also, *U.S. v. Dorsey*, 677 F.3d 944 (9th Cir. 2012).

The evidence offered in this case does not fit either of the categories.

In the first instance, the Government makes much of the fact that the proffered evidence is admissible because it is the subject of Count Five. Count Five in this

indictment concentrates exclusively on a single transaction on July 9, 2020, i.e., a payment to the Corporate AmEx, not KAMON's personal AmEx. The Government fails to tie the $15,000 payment to any GK bank account or to any of the embezzled client proceeds. Moreover, the Government cannot establish that the payment of the Corporate AmEx was not for legitimate GK corporate expenses. The sole fact that the Corporate AmEx was issued to GK and KAMON does not alone establish that the charges to the card were unauthorized corporate expenses. Nor does it establish that the payment made was made by KAMON. The mere fact that the Government chose to "throw in" a count regarding the payment to a Corporate American Express would require this court to defer to the whims of the prosecution and would substantially eviscerate the *Vizcarra-Martinez* standard that allows the admission of other acts only if those other acts and the charged conduct are part of "a single criminal transaction," or if the other acts are necessary to render the prosecutor's story "coherent and comprehensive."

The overarching story in this case is the abhorrent conduct by a lawyer in diverting his clients' funds. That he used staff members to carry out his scheme does not render isolated conduct – such as a single payment of a facially apparent authorized expense as alleged in Count Five– as an act of malfeasance by the staff.

Neither the exhibits nor the witnesses proffered are able to establish a connection between the amounts set forth in the exhibits and client funds in Counts One through Four. While Count Five alleges that the $15,000 payment was made to American Express on a corporate card issued to Girardi & Keese and KAMON, the Government cannot point to any charge on the Corporate AmEx that was an unauthorized charge made by Kamon. Thus, to establish these factors would require additional evidence and what is, in fact, a different trial set on a different date.

Obviously, the proximity in time between the other acts and the charged conduct can be relevant to whether those acts are inextricably intertwined. But the other acts in this case are not temporally connected to any of the counts. As seen on Exhibit B,

invoices from Bravo's Construction date back to between 2011 and 2015, with a few in 2020. None of the payments on the disclosed exhibits establish that the funds to pay the Corporate AmEx came from Client 2's settlement. Count Five is specifically alleged to have occurred on July 9, 2020. Clearly, there is no connection between any alleged payment to Bravo and Count Five. Also, the payments to Rokita Management date from 2017 to September 2018 – a time period long before the Corporate AmEx payment.

This is hardly the type of evidence that demonstrates a single criminal act, as in *Dorsey,* supra, or that is necessary in order to offer a cohesive story, as in *DeGeorge*, supra.

In *Dorsey*, the defendant was charged with having shot another. The evidence offered by the prosecution and admitted by the court was the testimony of a witness who saw the defendant the day before in possession of the same type of firearm that was used to shoot the victim. Clearly, the evidence was part of a single criminal act, i.e., possession of the gun used to shoot the victim. Thus, as the Seventh Circuit has stated, unless the evidence proves the charged crime, it must be viewed under Rule 404(b) and not as inextricably intertwined. See *United States v. Gorman*, 613 F.3d 711, 719 (7th Cir. 2010).

In *DeGeorge,* supra, the indictment alleged various counts of wire and mail fraud in connection with a scheme to defraud an insurer of a yacht. The prosecution sought to introduce evidence that the defendant had previously lost three insured vessels at sea and collected on the policies in every instance. The prosecution offered the evidence under the first category, i.e., that the evidence was part of a single criminal act. However, the *DeGeorge* court rejected the government's claim in this regard noting that the prior losses were too far removed in both time and circumstance to be linked with the alleged fraud in the case as part of a "single criminal episode." *U.S. v. DeGeorge* ,80 F.3d at 1220, citing *U.S. v. Lillard*, 354 F.3d 850, 854 (9th Cir.2003). Conversely, the Ninth Circuit found that the evidence fit into the second category. The Government had alleged a scheme that "included sham transactions to hide his ownership of the boat and

concealment of his loss history on the insurance application. The Government presented evidence, including Ebeling's testimony, to support this allegation.  The jury would not have understood the relevance of the transactions and concealment without hearing at least some explanation for why DeGeorge could not obtain insurance in his own name." *Id*. at 1220.

In the context of mail and wire fraud, the Ninth Circuit has held that uncharged transactions *that are part of an overall scheme* are "part of the same transaction" as the charged transactions, such that evidence of the uncharged transactions falls under the first inextricably intertwined exception. *United States v. Loftis*, 843 F.3d 1173, 1178 (9th Cir. 2016).

Here, the evidence of alleged conduct by KAMON in 2017 through 2018 (Exhibit 331 and Rokita testimony), in 2018 through June 2020 and a check for September 2020 (Exhibit 332 and Bravo testimony), Bravo Construction invoices from 2011 through 2014 (Exhibits 333 through 339 and Bravo testimony), list of payments 2011 through 2019 (Exhibit 340 and possibly Bravo testimony), and a payment to Porsche Financial in August 2020 for the account of GK (Exhibit 341) add nothing to the government's presentation of the evidence in Count Five charging conduct in 2020.  More fundamentally, the evidence does not tend to prove any of the elements necessary to establish the embezzlement of client funds as stated in Counts One through Four.

The Government labels the proffered evidence as a "side fraud."  This is a shorthand admission by the Government that the evidence is a "side *show"* and is not intrinsic to any of the crimes charged in this case.  It is thus quite manifest that the proffered evidence conduct is not inextricably intertwined and must be viewed through a Rule 404(b) prism.

B.   The Evidence May Not Be Admitted Under Rule 404(b)

As an alternative argument, the Government seeks to introduce the proffered evidence as 404(b) "other acts" evidence.

By now it should be abundantly clear that the real purpose of the proffered facts is to demonstrate that KAMON had a propensity to embezzle funds and thus commit the offenses charged in this case and nothing less. Of course, such purpose is prohibited by 404(b)(1). *U.S. v. Vo*, 413 F.3d 1010, 1017 (9th Cir. 2010).

But the Government contends that the other acts are admissible under Rule 404(b) to show KAMON's "motive, opportunity, intent, preparation, plan, knowledge, absence of mistake, and/or lack of accident for the offenses charged in the overall scheme." Exhibit A, page 2. The Government's position in this regard is that KAMON "knowingly and intentionally participated in the overall scheme in order to facilitate his ongoing embezzlement in the side fraud." The Government's shotgun approach to this argument in a conclusory fashion is insufficient to come within the exceptions to Rule 404(b). The Government fails to tie any of the acts to any specific 404(b) exception and explain how they fit.

Nor can it.

As noted earlier, the evidence sought to be introduced at trial as shown in Exhibit B hereto are not temporally connected to any of the embezzlement of client funds, nor does the Government offer any other evidence that demonstrates that any of the funds allegedly taken by KAMON were connected to a specific client much less to Girardi's overall scheme as charged in the indictment.

Rule 404(b)(2) allows the use of "other acts" evidence if it is genuinely offered to show "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *Id.* at 1018.

"In making admissibility decisions, the [district] court will admit Rule 404(b) evidence if (1) the evidence tends to prove a material point; (2) the prior act is not too remote in time; (3) the evidence is sufficient to support a finding that the defendant committed the other act; and (4) (in cases where knowledge and intent are at issue) the act is similar to the offense charged." *U.S. v. Jimenez-Chaidez, supra; U.S. v. Vo*, 413 F.3d 1010, 1018 (9th Cir. 2005).

"To satisfy the first and fourth requirements (relevance and similarity),…the Government must show a 'logical connection' between the defendant's knowledge obtained from commission of the [other] acts and the knowledge at issue in this case (Citations omitted.) The logical connection must be supported by some propensity-free chain of reasoning (Citations omitted.)" *U.S. v. Jimenez-Chaidez*, 96 F.4th at 1265. Yet, the Government offers no such reasoning. It simply asserts baldly and generally that KAMON was motivated to participate in Girardi's scheme without pointing to any evidence that demonstrates any of the elements of charged offenses.

The Government does not point to any evidence that establishes that KAMON made material misrepresentations to clients or that he embezzled any funds from the client trust account.

The "other acts" sought to be introduced do not aid the Government in establishing any of the elements of the charged offenses, nor does the Government demonstrate how the performance of the other acts aided in Girardi's overall scheme, aid in proving KAMON's knowledge or intent, or any other specific exception found in Rule 404(b). In fact, the listed exhibits are not tied to any of the counts charged in the offense. Therefore, they are not relevant at all.

Nor is KAMON's alleged conduct "similar" to the charged conduct in order to satisfy the fourth requirement. *Jimenez-Chaidez, supra.* As alleged in the indictment in this case, the one and only scheme to defraud charged in this case is one "to defraud victim clients to whom defendant GIRARDI and Girardi Keese had agreed to provide legal services…and to obtain money and property from such victim clients by means of material and fraudulent pretenses, representations, and promises, and the concealment of material facts, including material facts that defendant GIRARDI had a duty to disclose." Indictment, page 4, par. 2.

The other acts offered are not acts of misrepresentation to clients regarding their legal cases. They are not "logically connected" to the charged offense. Therefore, they are not similar to the conduct charged in this case.

"The elements of wire fraud are: (1) the existence of a scheme to defraud; (2) the use of wire, radio, or television to further the scheme; and (3) a specific intent to defraud." *United States v. Loftis*, 843 F.3d 1173, 1177 (9th Cir. 2016).  It requires a showing that defendant knowingly participated in a scheme to defraud.  *See, U.S. v. Miller*, 953 F.3d 395 (9th Cir. 2018).

As noted above, the wire fraud elements require that KAMON participate in making false statements to clients in order to obtain their money from cases entrusted to Girardi for handling.  The other acts sought to be introduced have no similarity or relevance to Girardi's alleged scheme; nor are they connected in time.

Accordingly, the proffered evidence does not fall within any of the exceptions to Rule 404(b) and would be introduced for the sole purpose of demonstrating a predisposition to commit fraud in general.

The evidence must be excluded.

C. Rule 403- The Balancing Test

"In addition to satisfying the four-part test [of Rule 404(b)], evidence of other crimes must also satisfy the Rule 403 balancing test—its probative value must not be substantially outweighed by the danger of unfair prejudice. … The Government has the burden of demonstrating that the evidence of other crimes satisfies these requirements." *U.S. v. Montgomery,* 150 F.3d 983, 1000-01 (9th Cir. 1998); *United States v. Cox*, 963 F.3d 915 (9th Cir. 2020).

Further, the Advisory Committee Notes to Rule 404 state: "The determination must be made whether the danger of undue prejudice outweighs the probative value of the evidence in view of the availability of other means of proof and other facts appropriate for making decisions[s] of this kind under Rule 403."  See also *U.S. v. Garcia*, 730 F.Supp.2d 1159 (C.D.Cal. 2010).

Rule 403 states in its entirety that, "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the

following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

A proper balancing of the equities under Rule 403 compels the conclusion that this evidence must be excluded. In fact, the Government's proffered evidence meets all but one of the factors in Rule 403, i.e., admission of the evidence will cause unfair prejudice, confuse the issues, mislead the jury, unduly delay the trial, waste time on irrelevant issues.

The Government's evidence would result in a distraction from the main issues charged in the Indictment. Because it is propensity evidence – already barred by the provisions of Rule 404 – the danger that the jury would be asked to focus on those acts and adjudge KAMON a dishonest person would take up substantial court time and time away from the trial of the issues here.

More to the point is the evidence's lack of probative value, as argued above.

A decision to allow the evidence would also require that KAMON to present a defense, not only to the charges in this case, but to the charges in CR 23-00024 JLS. This would necessitate additional time and resources and may delay the trial in this case.

## CONCLUSION

For all the reasons stated, defendant respectfully requests that his motion to exclude evidence of prior "other acts" be granted.

Dated: May 23, 2024          THE SEVERO LAW FIRM

By    /s/ *Michael V. Severo*
        Michael V. Severo
        Attorney for Defendant
           CHRISTOPHER KAMON