E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
SCOTT PAETTY (Cal. Bar No. 274719)
Assistant United States Attorney
Deputy Chief, Major Frauds Section
ALI MOGHADDAS (Cal. Bar No. 305654)
Assistant United States Attorney
Corporate and Securities Fraud Strikeforce
    1100 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-6527/1786
    Facsimile: (213) 894-6269
    E-mail: scott.paetty/ali.moghaddas@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>               v.<br><br>THOMAS VINCENT GIRARDI,<br><br>          Defendant. | No. CR 23-47-JLS-1<br><br>GOVERNMENT'S TRIAL MEMORANDUM<br><br>Trial Date:   August 6, 2024<br>Trial Time:   8:30 a.m.<br>Location:     Courtroom of the<br>              Hon. Josephine L.<br>              Staton |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Scott Paetty and Ali Moghaddas, hereby files its trial memorandum.

//

1        The government respectfully requests leave to file additional

2   memoranda as may become appropriate during the course of trial.

3   Dated: July 30, 2024                Respectfully submitted,

4                                       E. MARTIN ESTRADA
                                        United States Attorney

5                                       MACK E. JENKINS

6                                       Assistant United States Attorney
                                        Chief, Criminal Division

7

8                                            /s/
                                        _____
                                        SCOTT PAETTY
9                                       ALI MOGHADDAS
                                        Assistant United States Attorney
10
                                        Attorneys for Plaintiff
11                                      UNITED STATES OF AMERICA

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

DESCRIPTION                                                      PAGE

TABLE OF AUTHORITIES..............................................ii

TRIAL MEMORANDUM...................................................1

I.    STATEMENT OF THE CHARGES.....................................1

      A.   Summary of the Scheme To Defraud and the Victims.......1

           1.   Clients Defrauded.................................1

           2.   Illegitimate Expenses and Evidence of
                Misappropriation..................................3

      B.   The Statutes and Elements..............................3

II.   TRIAL........................................................4

      A.   Length of Trial........................................4

      B.   Witnesses..............................................4

      C.   Exhibits and Stipulations..............................5

      D.   Pretrial Motions.......................................7

III.  LEGAL AND EVIDENTIARY ISSUES.................................8

      A.   Embezzlement and Misappropriation......................8

      B.   Business Records.......................................9

      C.   Potential Defenses....................................10

           1.   Defendant Girardi's Cognitive Impairment.........10

           2.   Evidence of Kamon's Side Fraud Scheme............11

           3.   Attempts at Post-Theft Mitigation Is Not a
                Defense to Wire Fraud............................12

           4.   Victim Negligence is Not a Defense...............13

      D.   Summary Exhibits and Summary Witness..................14

      E.   Reciprocal Discovery..................................16

IV.   CONCLUSION..................................................18

i

**TABLE OF AUTHORITIES**

DESCRIPTION                                                                PAGE

Cases

Arthur v. Gallagher Bassett Servs., Inc.,
  No. CV 09-4882 SVW (CWX), 2010 WL 11596468 (C.D. Cal. June 1, 2010)
  ............................................................... 10
Barsky v. United States,
  339 F.2d 180 (9th Cir. 1964) ................................... 16
Bourjaily v. United States,
  483 U.S. 171 (1987) ............................................ 10
Carpenter v. United States,
  484 U.S. 19 (1987) ............................................. 8
Goldberg v. United States,
  789 F.2d 1341 (9th Cir. 1986) .................................. 15
Ohio v. Roberts,
  448 U.S. 56 (1980) ............................................. 9
Taylor v. Illinois,
  484 U.S. 400 (1988) ............................................ 17
U-Haul Int'l v. Lumbermans Mutual Casualty Co.,
  576 F.3d 1040 (9th Cir. 2009) .................................. 10
United States v. Catabran,
  836 F.2d 453 (9th Cir. 1988) ................................... 10
United States v. Ciccone,
  219 F.3d 1078 (9th Cir. 2000) .................................. 14
United States v. Coin,
  753 F.2d 1510 (9th Cir. 1985) .................................. 8
United States v. Johnson,
  594 F.2d 1253 (9th Cir. 1979) .................................. 15
United States v. Jones,
  472 F.3d 1136 (9th Cir. 2007) .................................. 8
United States v. Lindsey,
  850 F.3d 1009 (9th Cir. 2017) .................................. 14
United States v. Oren,
  893 F.2d 1057 (9th Cir. 1990) .................................. 8
United States v. Ray,
  930 F.2d 1368 (9th Cir. 1990) .................................. 10
United States v. Rizk,
  660 F.3d (9th Cir. 2011) ....................................... 15
United States v. Scales,
  594 F.2d 558 (6th Cir. 1979) ................................... 15
United States v. Shirley,
  884 F.2d 1130 (9th Cir. 1989) .................................. 16
United States v. Soulard,
  730 F.2d 1292 (9th Cir. 1984) .................................. 16
United States v. Treadwell,
  593 F.3d 990 (2010) ............................................ 8,9

### TABLE OF AUTHORITIES (CONTINUED)

DESCRIPTION                                                          PAGE

Statutes

18 U.S.C. § 1343.............................................. 3, 8

Federal Rules of Evidence

Fed. R. Evid. 104(a).............................................. 10
Fed. R. Evid. 803(6)........................................... 9, 10

1

**TRIAL MEMORANDUM**

2

**I.   STATEMENT OF THE CHARGES**

3       Defendant Thomas Vincent Girardi is charged in the indictment

4  with a scheme to defraud former clients of the Girardi Keese law firm

5  through the misappropriation of settlement funds in a fraud scheme

6  dating back to at least 2010.[1]   The government's case focuses on four

7  client victims that are identified in the indictment.   (Dkt. 1.)

8       **A.   Summary of the Scheme To Defraud and the Victims**

9       Defendant Girardi's scheme involved the years-long

10  misappropriation and embezzlement of millions of dollars from client

11  trust accounts at the former law firm Girardi Keese.   Specifically,

12  the scheme involved defendant Girardi stealing millions of dollars in

13  client settlement funds and failing to pay Girardi Keese clients the

14  money that was due them.   In carrying out this scheme, defendant

15  provided a litany of false excuses for failure to pay clients and co-

16  defendant Kamon aided and abetted the scheme by transferring client

17  funds at defendant Girardi's direction to pay previously defrauded

18  clients or other unrelated expenditures.   The scheme involved, among

19  other things, the four client matters below:

20           1.   Clients Defrauded

21       "Client 1" lived in San Bruno, California.   Beginning in October

22  2010, defendant Girardi and Girardi Keese had a formal attorney-

23  client relationship with Client 1 and represented him in connection

24  with a lawsuit against a public utility related to significant

25

26

27          _____

28       [1] Co-defendant Christopher Kamon ("Kamon") has been severed for
trial.   The parties will be filing a a stipulation to continue that
trial date to January 21, 2025.

injuries Client 1 sustained as a result of an explosion that caused severe burns all over his body.

"Client 2" lived in Lake Havasu City, Arizona.  Beginning in May 2019, defendant Girardi and Girardi Keese had a formal attorney-client relationship with Client 2 in connection with potential litigation related to a boating accident as a result of which Client 2's husband died.

"Client 3" lived in Castaic, California.  Beginning in approximately 2014, defendant Girardi and Girardi Keese had a formal attorney-client relationship with Client 3 in connection with a lawsuit against a medical device provider related to severe injuries that Client 3 sustained as a result of a defective medical device.

"Client 4" and "Client 5" lived in Los Angeles, California. Beginning in December 2019, defendant Girardi and Girardi Keese had a formal attorney-client relationship with Client 4 and Client 5 representing the two in connection with a lawsuit related to injuries Client 4, Client 5, and their minor son, sustained in an automobile collision.

As part of the scheme and to conceal the embezzlements and misappropriations from the victim clients, defendant Girardi sent lulling communications to the clients that, among other things, falsely denied that the settlement proceeds had been paid and falsely claimed that Girardi Keese could not pay the settlement proceeds to clients until certain purported requirements had been met, such as addressing supposed tax obligations, settling bankruptcy claims, obtaining supposedly necessary authorizations from judges, and satisfying other debts.

2.   <u>Illegitimate Expenses and Evidence of Misappropriation</u>

During the same timeframe as the charged conduct in this case, defendant Girardi diverted tens of millions of dollars from the Girardi Keese operating account to pay illegitimate expenses, including over $25 million to pay the expenses of EJ Global, a company formed by his spouse related to her entertainment career, as well as spent millions of dollars of Girardi Keese funds on private jet travel, jewelry, luxury cars, and exclusive golf and social clubs.  Meanwhile, co-defendant Kamon was separately, unbeknownst to defendant Girardi, funneling millions of dollars from the Girardi Keese operating accounts to accounts that he controlled for his own personal enrichment.  At the end of 2020, as defendant and his law firm faced mounting legal problems related to his years'-long theft of funds, Girardi Keese was forced into involuntary bankruptcy.

**B.   The Statutes and Elements[2]**

<u>Wire Fraud (Counts 1-4)</u>

The elements of the offense charged in Counts 1-4, <u>i.e.</u>, wire fraud, in violation of 18 U.S.C. § 1343, are as follows:

1.   The defendant knowingly participated in or devised a scheme or plan to defraud, or a scheme or plan for obtaining money or property by means of false or fraudulent pretenses, representations, promises, or omitted facts.  Deceitful statements of half-truths may constitute false or fraudulent representations;

---

[2] Pursuant to the Court's order the parties have filed joint proposed and joint disputed instructions, including instructions on the charged offenses.  (Dkt. 310.)

2.    The statements made or facts omitted as part of the scheme were material; that is, they had a natural tendency to influence, or were capable of influencing, a person to part with money or property;

3.    The defendant acted with the intent to defraud, that is, the intent to deceive and cheat; and

4.    The defendant used, or caused to be used, an interstate or foreign wire communication to carry out or attempt to carry out an essential part of the scheme.

Ninth Circuit Model Criminal Jury Instructions, No. 8.124 (Wire Fraud).

## II.  TRIAL

### A.    Length of Trial

The government expects that its case-in-chief will take five to seven days, including cross-examination.  The parties have represented to the Court that the trial will take no more than 12 court days.

### B.    Witnesses

The government presently intends to call the following witnesses in its case-in-chief:

1.    Joseph Ruigomez

2.    Kathleen Ruigomez

3.    Kimberly Archie

4.    Kim Cory

5.    Judy Selberg

6.    Eric Seuthe

7.    Alexa Galloway

8.    Norina Rouillard

9.    Josephina Hernandez

4

10.  Arin Scapa

11.  Shirleen Fujimoto

12.  Erika Saldana

13.  John Abassian

14.  Kathy Marlatt

15.  IRS Special Agent Ryan Roberson

Rebuttal

16.  Dr. Ryan Darby

The government reserves the right to call additional witnesses, including additional rebuttal witnesses, as necessary.

**C.   Exhibits and Stipulations**

The government's exhibits consist primarily of Girardi Keese business records (including client files and law firm emails), bank records, and other documents related to the four charged victim clients.  The parties have filed a stipulation (Dkt. 311), summarized below, regarding the admissibility of the majority of these exhibits.

- The parties agree that records produced to any party by Elisa Miller, including any of her agents (the "trustee"), are authentic and admissible at trial against a hearsay exception (but all sides retain the right to object under Rules 401 and 403), such as: bank records, Girardi Keese email communications, and other spreadsheets and financial data gathered and/or created at the trustee's direction;

- the parties agree that the following categories of documents related to the four client matters charged in the Indictment are authentic and admissible at trial against a hearsay objection (but all sides retain the

right to object under Rule 401 and 403): retainer
agreements, settlement agreements, consents, client
correspondence, correspondence with the client's later
representatives, internal memoranda, and court filings.
(The stipulation reflects defendant Girardi's
preservation of his objection to evidence of client
injuries despite the Court's ruling that such evidence is
admissible);

- The parties agree that all of the above evidence agreed
  to as authentic and admissible through this stipulation
  may be introduced and admitted into evidence at trial at
  any time without laying foundation for a particular
  exhibit's authenticity or admissibility.  By entering
  into this stipulation, the parties do not intend to
  suggest that other evidence unaddressed by the
  stipulation is not admissible, only that pretrial
  admissibility has not yet been agreed upon;

- The parties agree that each wire alleged in Counts One
  through Four of the Indictment is a wire communication
  that was used, or caused to be transmitted, in interstate
  commerce;

- The government has agreed to make its investigating
  federal agents available to the defense during the
  defense case-in-chief without need for trial subpoenas.
  This includes federal agents from both the FBI and the
  IRS, and in both this district and the Northern District
  of Illinois.

6

**D.   Pretrial Motions**

The Court has ruled on all motions <u>in limine</u> and on two additional <u>ex parte</u> applications related to the scope of the evidence in the trial of defendant Girardi.[3]  In sum, the Court has:

- Denied the government's motion to exclude the testimony of Dr. Helena Chui.  (Dkt. 235.)

- Denied defendant Girardi's <u>ex parte</u> application to exclude the testimony of Dr. Ryan Darby.  (Dkt. 303.)

- Denied the government <u>ex parte</u> application to exclude evidence of Kamon's side fraud charged in CR-23-24-JLS and Kamon's flight from prosecution.  (Dkt. 302; Dkt. 289 at 6-8.)

-  Denied defendant Girardi's motion to exclude evidence of client injuries to the extent such evidence appears in the Government's exhibits, references financial consequences and client losses but limited testimony to the basic nature of the injuries giving rise to the claims.  (Dkt. 289 at 2-3.)

- Denied the government's motion to preclude evidence of defendant Girardi's post-scheme mental condition to the extent such evidence was relied on by Dr. Chui and reflects upon what defendant's mental status was during the relevant time period.  (<u>Id.</u> at 4.)

---

[3] As referenced above, the Court severed the trials of defendant Girardi and Kamon.  The Court also denied defendant's motion to suppress evidence obtained from the Girardi Keese bankruptcy trustee. (Dkt. 299.)

7

- Granted the government's motion to admit evidence of defendant Girardi's misappropriation of settlement funds. (Id. at 5-6.)

## III.  LEGAL AND EVIDENTIARY ISSUES

### A.  Embezzlement and Misappropriation

The government intends to prove at trial that the fraudulent scheme involved, among other things, embezzling and misappropriating settlement money that defendant Girardi was supposed to be holding in trust for his clients.  In an embezzlement scheme, the earliest point at which the government must prove fraudulent intent is the point at which the defendant converted to his own use funds he was supposed to be holding in trust.  The "concept of fraud includes the act of embezzlement, which is the fraudulent appropriation to one's own use of the money or goods entrusted to one's care by another." Carpenter v. United States, 484 U.S. 19, 27 (1987) (internal quotations omitted).  Thus, even if defendant Girardi did not possess a fraudulent intent when he received money that he was supposed to hold in trust, "his fraudulent appropriation of the funds still satisfies the elements of § 1343." United States v. Jones, 472 F.3d 1136, 1140 (9th Cir. 2007).

Furthermore, the crime of embezzlement is complete when the misapplication or embezzlement occurs.  See, e.g., United States v. Coin, 753 F.2d 1510, 1511 (9th Cir. 1985).  Similarly, the crime of fraud is committed when a defendant asserts false representations or omits material facts, with the intent to defraud or deceive, in order to obtain the money or property of another.  See United States v. Oren, 893 F.2d 1057, 1061 (9th Cir. 1990); United States v.

8

1    *Treadwell*, 593 F.3d 990, 996-98 (2010), overruled on other grounds by

2    *United States v. Miller*, 953 F.3d 1095 (9th Cir. 2020).

3         **B.   Business Records**

4         As stated above, the parties have entered a stipulation

5    regarding the admissibility of the vast majority of the government's

6    exhibits.  To the extent the government seeks to admit additional

7    exhibits absent a stipulation that were obtained from various

8    institutions as self-authenticating business records pursuant to

9    Federal Rule of Evidence 902(11), those records should also be

10   admissible.

11        Records that are accompanied by a 902(11) certification are not

12   only self-authenticating, they also fall within an exception to the

13   rule against hearsay if the following conditions are met:

14        (1) "[T]he record was made at or near the time by – or from

15   information transmitted by – someone with knowledge";

16        (2) [T]he record was kept in the course of a regularly conducted

17   activity of a business [or] organization";

18        (3) "[M]aking the record was a regular practice of that

19   activity"; and

20        (4) "[T]he opponent does not show that the source of information

21   or the method or circumstances of preparation indicate a lack of

22   trustworthiness."

23        Fed. R. Evid. 803(6).

24        Because Rule 803(6) represents a firmly rooted hearsay

25   exception, if non-testimonial evidence meets the requirements for

26   admission under the Rule, no further showing of reliability is

27   necessary for admission under the Confrontation Clause.  See *Ohio v.*

28   *Roberts*, 448 U.S. 56, 66 (1980), overruled on other grounds by

Crawford v. Washington, 541 U.S. 36 (2004); United States v. Ray, 930 F.2d 1368, 1371 (9th Cir. 1990).

Computer printouts that are compilations of data regularly maintained by a business, such as printouts from a bank's internal systems that the bank maintains in the ordinary course of its business, are admissible as records of regularly conducted activity pursuant to Fed. R. Evid. 803(6).  See United States v. Catabran, 836 F.2d 453, 458 (9th Cir. 1988) (questions as to accuracy "of business records, would have affected only the weight of the printouts, not their admissibility."); U-Haul Int'l v. Lumbermans Mutual Casualty Co., 576 F.3d 1040, 1043-44 (9th Cir. 2009) (computer records kept in the regular course of business activity properly admitted under Fed. R. Evid. 803(6)).

Statements within emails can themselves be business records, but those statements need to satisfy the requirements of Fed. R. Evid. 803(6).  See Ray, 930 F.2d at 1370; Arthur v. Gallagher Bassett Servs., Inc., No. CV 09-4882 SVW (CWX), 2010 WL 11596468, at *6 (C.D. Cal. June 1, 2010) ("There is some authority for admitting emails as business records.").

In determining if these foundational facts have been established, the court may consider hearsay and other evidence not admissible at trial.  See Fed. R. Evid. 104(a); Bourjaily v. United States, 483 U.S. 171, 178-79 (1987).

**C.   Potential Defenses**

1.   Defendant Girardi's Cognitive Impairment

The issue of defendant Girardi's mental status has been extensively litigated in this case.  The Court's pretrial rulings on the testimony of Dr. Chui and Dr. Darby regarding defendant's mental

state and the admissibility of his post-scheme mental condition have limited the scope of any such testimony at this trial.  Specifically, evidence of defendant Girardi's post-scheme mental state is only relevant to the extent it bears on his knowledge and intent at the time of the alleged scheme.  Any mental condition evidence that falls outside that scope, or addresses other aspects of the trial, or the defendant's character, should be excluded.  Similarly, subject to the above rulings, any additional evidence that the defense seeks to introduce related to defendant's actions and intentions after the criminal acts is irrelevant to the crimes committed and otherwise inadmissible under Rule 403.

### 2.   Evidence of Kamon's Side Fraud Scheme

Defendant Girardi has stated his intention to place blame for the entirety of the charged scheme on co-defendant Kamon, and the Court has ruled that evidence of Kamon's side fraud (charged in CR 23-24-JLS) and flight from prosecution is intrinsic to this scheme and thus admissible at trial.  (Dkt. 302; Dkt. 289 at 6-8.)

In light of the Court's statements at the final status conference that it may modify or further clarify these rulings, the government will raise any potential objections to the trial presentation of evidence related to Kamon's side fraud scheme on Rule 403 grounds, and any other applicable grounds under the Federal Rules of Evidence as the trial progresses.  Since Kamon has been severed for trial, the government is not seeking to introduce evidence of Kamon's side fraud in its case-in-chief.

The government has consistently maintained that it will present its case efficiently and will focus on the charged executions identified in the indictment.  That said, the government has also

11

consistently maintained that it reserves the right to present additional evidence to rebut any defense theories at trial.  While the government does not presently intend to introduce evidence of additional defrauded victims, it reserves the right to present additional testimony and/or documentary evidence that defendant Girardi's misappropriation of settlement funds predated defendant Kamon's role as CFO.

    3. <u>Attempts at Post-Theft Mitigation Is Not a Defense to Wire Fraud</u>

  There is no dispute that during the scheme timeframe, defendant Girardi transferred tens of millions of dollars of his own money into the Girardi Keese trust accounts further evincing his misuse of these accounts.  At the June 20 motions hearing, counsel for defendant Girardi acknowledged that "Girardi had a significant amount of his own personal money also swimming around in these [trust] accounts." (Dkt. 228 at 23:8-10.)  The indictment alleges that defendant, as a member of the California State Bar, was obligated to comply with the California Rules of Professional Conduct applicable to attorneys, including requirements related to the safekeeping of client funds in his law firm's client trust accounts.  (Dkt. 1 ¶ 1(e).)  Those rules are clear that no funds belonging to an attorney are allowed to be commingled with client funds in a client trust account, except in very limited circumstances (none of which apply here).  <u>See</u> Cal. R. Prof. Conduct 4-100.  To the extent defendant claims that his transfer of his personal funds into the trust account is exculpatory evidence, he is mistaken and he should be precluded from making any such argument.

1     The parties have proposed a jury instruction based on <u>United</u>

2 <u>States v. Molinaro</u> for the premise that a good faith belief in the

3 truth of a misrepresentation negates criminal intent; however, "a

4 defendant's belief that the victims of the fraud will be paid in the

5 future or will sustain no economic loss is no defense to the crime."

6 11 F.3d 853, 863 (9th Cir. 1993).  (<u>See</u> Dkt. 310 at 115.)  This is an

7 accurate statement of the law in the Ninth Circuit and accounts for

8 the principle that defendant's transfer of his personal funds into

9 his law firm's bank accounts to pay back clients whom he had

10 defrauded is not a defense to the charged crimes.

11     Furthermore, as discussed in the previous section, should

12 defendant claim that his transfer of personal funds into the Girardi

13 Keese bank accounts evinces a lack of intent to defraud because it

14 was done merely to plug holes in the Girardi Keese account balances

15 caused by Kamon's side fraud, he opens the door to additional

16 rebuttal evidence of defendant's misappropriation and embezzlement of

17 client funds for improper expenditures prior to the charged scheme.

18          4.   <u>Victim Negligence is Not a Defense</u>

19     Any attempt by defendant Girardi to fault his clients for

20 delayed payment of their settlements should be excluded.  For

21 example, defendant sent several lulling letters to Client 1 and his

22 family falsely stating that both he and Justice Panelli, the former

23 state supreme court justice who mediated Client 1's case, had

24 concerns that providing Client 1 with large sums of money would be

25 harmful because Client 1 might not spend it wisely.  However, a

26 victim's negligence, carelessness, or even foolishness is not a

27 defense to a fraud charge.  The laws against fraud are designed to

28 protect naive and careless victims just as well as experienced and

careful ones.  See United States v. Lindsey, 850 F.3d 1009, 1015 (9th Cir. 2017).  In fact, the "lack of guile on the part of those solicited may itself point with persuasion to the fraudulent character of the [scheme]."  Id. (quoting United States v. Ciccone, 219 F.3d 1078, 1083 (9th Cir. 2000)).  Defendant Girardi should not be allowed to assert that his lies to his clients about the safety and availability of their settlement funds were somehow justified because the lies were made for the purported benefit of the client.

### D.   Summary Exhibits and Summary Witness

This case involves a large number of documents, including voluminous financial and law firm records.  To assist the jury's understanding of the case, the government intends to present various charts and summaries that will aid the jury in understanding the evidence, including exhibits that show the flow of money in and out of the Girardi Keese client-trust accounts and other bank accounts related to the charged client cases, as well as charts showing defendant's embezzlement and misappropriation of those funds.  The government has provided defendant Girardi draft copies of these charts pursuant to a draft summary chart agreement which precludes Girardi from using draft versions of the charts during cross examination.  The government is in the process of finalizing these charts and will provide final versions to defendant Girardi prior to trial.  Defendant Girardi has advised the government that he does not object to many of the charts but has stated objections to certain others.  To the extent the parties cannot come to an agreement on admissibility, the government will raise the issue with the Court outside the presence of the jury prior to seeking admission of the charts into evidence.

A summary chart may be admitted as substantive evidence when the proponent establishes that the underlying documents upon which the summary is based are voluminous, admissible, and available for inspection.  United States v. Johnson, 594 F.2d 1253, 1255-56 (9th Cir. 1979).  Although the materials underlying the summary must be admissible, they need not themselves be admitted into evidence. United States v. Rizk, 660 F.3d at 1125, 1130—31 (9th Cir. 2011); United States v. Scales, 594 F.2d 558, 563 (6th Cir. 1979) (affirming introduction of summary charts presenting an organization of undisputed objective evidence in terms of relevant counts of the indictment).  Any contention that the chart may contain inaccuracies or omissions goes to the weight of the evidence, not its admissibility.  Rizk, 660 F.3d at 1131 at n.2.

Rule 1006 does not require that a jury's examination of the underlying records be literally impossible before a summary or a chart may be utilized.  "All that is required for the rule to apply is that the underlying writings be 'voluminous' and that in court examination not be convenient." Scales, 594 F.2d at 562.  Where a chart does not contain complicated calculations that would require an expert for accuracy, authentication of the chart requires only that the witness (1) have properly catalogued the exhibits and records upon which the chart is based; and (2) have knowledge of the analysis of the records referred to in the chart.  Id.; see Goldberg v. United States, 789 F.2d 1341, 1343 (9th Cir. 1986) (upholding district court's determination that the testimony of a revenue agent as to summaries of voluminous tax records did not include any expert opinions or conclusions).

1    Finally, summary charts need not contain the defendant's version

2    of events.  See Barsky v. United States, 339 F.2d 180, 181 (9th Cir.

3    1964) (rejecting defendant's argument that summary should be excluded

4    because it did not contain his version of the case; accepting that

5    argument "would be to hold that if a defendant had an alibi, no

6    matter how improbable, then no expert could prepare a summary of the

7    evidence tending to prove guilt").

8    The government will seek to admit these charts through its

9    summary witness IRS Special Agent Ryan Roberson.  A summary witness

10   may properly testify about, and use a chart to summarize, evidence

11   that is voluminous and complex.  The court and jury are entitled to

12   have a witness "organize and evaluate evidence which is factually

13   complex and fragmentally revealed."  United States v. Shirley, 884

14   F.2d 1130, 1133-34 (9th Cir. 1989) (agent's testimony regarding her

15   review of various telephone records, rental receipts, and other

16   previously offered testimony held to be proper summary evidence, as

17   it helped jury organize and evaluate evidence; summary charts

18   properly admitted).  Further, a summary witness may be assisted by

19   others in the preparation of summary evidence; the assistance

20   provided by other people in the preparation of summary evidence goes

21   to its weight, not its admissibility.  See United States v. Soulard,

22   730 F.2d 1292, 1299 (9th Cir. 1984) (finding summary witness

23   "Soulard's arguments on the motion went to the weight of the

24   evidence, not to its admissibility.").

25   **E.   Reciprocal Discovery**

26   On July 27, 2024, defendant Girardi produced voluminous

27   discovery (totaling approximately 50,000 pages) to the government

28   pursuant to the government's requests for reciprocal discovery to

which it was entitled under Rules 16(b) and 26.2 of the Federal Rules of Criminal Procedure.  This production roughly a week before trial does not identify any specific exhibits that defendant seeks to use at trial and amounts to a "data dump" that does little to ensure that the trial focuses on matters related to the charged cases and conduct.  Under the parties' evidentiary stipulations all materials obtained from the Girardi Keese bankruptcy trustee are admissible against a hearsay exception (with rights reserved to object under Rules 401 and 403) (see Dkt. 311 ¶ 1); however, this defense production does nothing to streamline issues for trial and does not comport with the spirit of the reciprocal discovery rules.  Based on defense counsel's communications with the Court on the day of this filing, we understand the defense "will have the vast majority of [its] exhibits ready on the first day of trial and will provide as much specificity" as they can before then.  The government asks that the defense be ordered to provide its narrowed exhibits on or before the first day of trial.

Furthermore, as noted in defendant's discovery production letter, defendant's production has not been filtered for any potential privilege that might be held by defendant Girardi in a personal capacity.  This essentially puts the onus on the government to act as gatekeeper for defendant's personal privileges and risks needless delay in determining whether such evidence is admissible.  Nevertheless, if the government becomes aware of any privileged materials, it will either destroy or return them to defendant and will not seek to use them at trial.

To the extent defendant Girardi attempts to introduce or use any evidence at trial that he has not produced to the government, such

17

documents should be excluded.  See Taylor v. Illinois, 484 U.S. 400, 415 (1988) (defendant's failure to comply with, or object to, government's discovery request before trial justified exclusion of unproduced evidence).

Other than defendant Girardi's reliance on the cognitive impairment argument, defendant has not indicated an intent to raise affirmative defenses.  Thus, if he raises previously unmentioned affirmative defenses during the trial, the government reserves the right to object and request that the Court exclude the defendant's undisclosed affirmative defenses.

**IV.  CONCLUSION**

The government respectfully requests leave to file supplemental trial memoranda before or during trial, as may become appropriate.

Dated: July 30, 2024                    Respectfully submitted,

                                        E. MARTIN ESTRADA
                                        United States Attorney

                                        MACK E. JENKINS
                                        Assistant United States Attorney
                                        Chief, Criminal Division


                                        _____/s/_____
                                        SCOTT PAETTY
                                        ALI MOGHADDAS
                                        Assistant United States Attorneys
                                        Attorneys for Plaintiff
                                        UNITED STATES OF AMERICA