CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
CHARLES J. SNYDER (Bar No. 287246)
(Email:  Charles_Snyder@fd.org)
SAMUEL O. CROSS (Bar No. 304718)
(Email:  sam_cross@fd.org)
J. ALEJANDRO BARRIENTOS (Bar. No. 346676)
Email: Alejandro_Barrientos@fd.org
Deputy Federal Public Defender
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone:  (213) 894-2854
Facsimile:  (213) 894-0081

Attorneys for Defendant
THOMAS VINCENT GIRARDI

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>THOMAS VINCENT GIRARDI,<br><br>Defendant. | Case No. Case No. 2:23-cr-47-JLS-1<br><br>**THOMAS GIRARDI'S MEMORANDUM OF LAW RE PARR V. UNITED STATES**<br><br>**Trial date:**  August 6, 2024 |

## MEMORANDUM OF LAW

In his oral motion for judgment of acquittal, Thomas Vincent Girardi argued that *Parr v. United States*, 363 U.S. 370 (1960), precluded the government's theory that wire transfers of settlement proceeds into the Girardi Keese trust accounts are executions of the alleged scheme to defraud because state law requires attorneys to deposit such funds into their trust accounts.  The Court requested further briefing on the matter.

In *Parr*, the defendants were charged with a mail-fraud scheme to use tax revenue for their personal benefit, with most of the alleged mailings being correspondence required for the typical tax-collection process.  363 U.S. at 374-82. "The crucial question" was "whether the legally compelled mailings of the lawful—or, more properly, what are not charged or shown to have been unlawful—letters, tax statements, checks and receipts, complained of in those counts, properly may be said to have been for the purpose of executing a scheme to defraud because those legally compelled to cause and causing those mailings planned to steal an indefinite part of the receipts." *Id*. at 389.  The Supreme Court said no.  The government agency was legally required to assess and collect taxes, there was no proof that the taxes assessed were in any way unlawful, and the agency was compelled to collect and provide receipts for the taxes by state law, which compelled it to use the mails for those purposes.  *Id*. at 391. Those "legally compelled mailings" weren't "shown to have been unlawful steps in a plot, parts of the execution of the fraud, incident to an essential part of the scheme, or to have been made for the purpose of executing such scheme[.]"  *Id*. (cleaned up).  The Supreme Court therefore held that such "mailings made or caused to be made under the imperative command of duty imposed by state law" cannot be "criminal under the federal mail fraud statute, even though some of those who are so required to do the mailing for the [agency] plan to steal, when or after received, some indefinite part of its moneys."  *Id*.

1

1    The Ninth Circuit distinguished *Parr* in *United States v. Mitchell*, 744 F.2d 701

2  (1984).  The defendant in that case was a city councilman who used his position to

3  secure the council's approval of a project, without disclosing that he had received

4  $100,000 from the project's owner to do so.  *Id*. at 703.  He was convicted on six

5  counts of mail fraud based on notices sent by the planning commission or the city

6  council in connection with the project.  *Id*. at 703-04.  Even though these notices were

7  required by law, the defendant's "fraudulent scheme triggered the mailings, which

8  would not have occurred except as a step in the scheme."  *Id*. at 704.  In contrast, "the

9  tax statements, checks, and receipts mailed in *Parr* were sent out regularly and

10  routinely and would have been mailed even if the scheme to defraud the district had not

11  existed."  *Id*. (cleaned up).  The Ninth Circuit therefore held that *Parr* did not require

12  reversal of the mail-fraud counts.  *Id*.

13    The Ninth Circuit addressed *Parr* again in *United States v. Bernhardt*, 840 F.2d

14  1441 (9th Cir. 1988).  That case involve a broad scheme to defraud, which included

15  diverting money collected from homeowners by a mortgage service company utilized

16  by the defendants called REFC.  *Id*. at 1143.  About 30 mail-fraud counts were based

17  on the defendants causing the homeowners to mail their mortgage payments to REFC

18  by sending them pre-addressed envelopes.  *Id*.  The defendants argued that *Parr*

19  required dismissal of these counts because there was a pre-existing legal obligation to

20  collect the mortgage and tax payments of the homeowners by virtue of REFC's

21  contracts with the mortgage companies.  *Id*. at 1446.  The Ninth Circuit distinguished

22  *Parr*, where the legal obligation arose from state law rather than from contracts

23  resulting from the defendants' fraudulent activities.  *Id*.  Thus, the issue was "whether

24  mailings required by a *private agreement*, wherein one of the parties to the agreement

25  is seeking to defraud the other, can be said to have been sent in furtherance of the

26  underlying scheme to defraud."  *Id*. at 1447 (emphasis in original).  Unlike in *Parr*,

27  "the requirement for the mailings stemmed from private convenience rather than from

28

2

1  an independent and unrelated obligation, namely state law." *Id.*  That case therefore

2  didn't require dismissal of the mail-fraud counts.  *Id.*

3      As in *Parr*, and unlike in *Bernhardt*, the wire transfers of settlement funds into

4  the firm's trust accounts were mandated by state law.  Furthermore, unlike in *Mitchell*,

5  the wire transfers would have occurred with or without the fraudulent scheme.  There

6  were no allegations, let alone proof, that Girardi Keese fraudulently handled the clients'

7  cases resulting in the settlements.  The claim is only that the firm took more money

8  than it was due after that.

9      The government's recently-filed brief on *Parr* cites different authority.  *See* ECF

10  352.

11      For example, it relies on *Schmuck v. United States*, 489 U.S. 705 (1989).  But

12  that case dealt with a different holding of *Parr* that concerned a second fraudulent

13  scheme to obtain gasoline.  *See Parr*, 363 U.S. at 392-93 ("Counts 17, 18 and 19 of the

14  indictment relate to a different subject"—namely, "fraudulently obtained gasoline and

15  other filling station products").  In *Schmuck*, the Supreme Court expressly stated that it

16  was *not* dealing with a situation analogous to *Parr*'s other "fraudulent scheme through

17  which the defendant school board members misappropriated school district tax

18  revenues" because, unlike in that case, "[n]o such legal duty is at issue here."  489 U.S.

19  at 713 n.7.  The present case, however, does involve a legal duty.[1]

20      The government also cites *United States v. Kellogg*, 955 F.2d 1244 (9th Cir.

21  1992).  The mailings at issue in that case were tax returns sent to the IRS that actually

22  contained false information.  *Id.* at 1247-48.  The Ninth Circuit distinguished *Parr*

23  because "the scheme [there] was essentially one to steal funds that had been mailed, not

24  to cause deception through the mails"—unlike the tax returns with "fraudulent

25

26

27  ___

[1] The case cited by the government in a footnote applied *Schmuck* and, thus, this
different part of *Parr*.  *See United States v. Shipsey*, 363 F.3d 962, 971-72 (9th Cir.
2004) ("*Parr* involved an unauthorized use of a school district's credit card to obtain

28  gasoline."), *overruled on other grounds*, *United States v. Miller*, 953 F.3d 1095 (9th
Cir. 2020).

3

misrepresentations" mailed in that case. *Id*. at 1248 (cleaned up). In contrast, there were no fraudulent representations in the wired settlement funds at issue here, nor could there be.

Also cited, but not discussed, by the government is *United States v. Licciardi*, 30 F.3d 1127 (9th Cir. 1994). The one-paragraph discussion in that case merely cited *Kellogg* and applied it to a mailed letter that "contained false statements meant to cover the fraud and so was a part of the scheme to defraud." *Id*. at 1133. Again, the settlement funds at issue here did not—and could not—contain false statements.

Finally, the government relies primarily on *United States v. Layfield*, __ Fed.Appx. __, 2024 WL 982437 (9th Cir. Mar. 7, 2024). But such an unpublished disposition is not Ninth Circuit precedent. *See* 9th Cir. Cir. R. 36-3(a) (cleaned up). The distinction between published opinions and unpublished disposition is important. "Precedential opinions are meant to govern not merely the cases for which they are written, but future cases as well." *Hart v. Massanari*, 266 F.3d 1155, 1176 (9th Cir. 2001). They "call for the most precise drafting and re-drafting to ensure that the rule announced sweeps neither too broadly nor too narrowly, and that it does not collide with other binding precedent that bears on the issue." *Id*. at 1176-77. In contrast, "unpublished dispositions provide shorthand explanations meant to apprise the parties of the basis for a decision" and "designedly lack[], because of their limited function, the nuance and breadth of precedential opinions[.]" *Grimm v. City of Portland*, 971 F.3d 1060, 1067 (9th Cir. 2020) (cleaned up). Such a decision "is not written in a way that will be fully intelligible to those unfamiliar with the case, and the rule of law is not announced in a way that makes it suitable for governing future cases." *Hart*, 266 F.3d at 1177-78.

*Layfield* is a prime example of why unpublished dispositions do not govern future cases. First, after very brief summaries of *Parr*, *Mitchell*, and *Bernhardt*, this was its cursory legal analysis: "Our decisions in *Mitchell* and *Bernhardt* control this case, not *Parr*; Layfield's duty under state law to deposit client money into a trust

account 'stemmed from' his fraudulent representation of, and contractual arrangements with, each of his firm's clients." *Layfield*, 2024 WL 9824376, *1-2 (quoting *Bernhardt*, 840 F.2d at 1447).  Most of the rest of the one-paragraph discussion of this issue quoted allegations in the indictment concerning particular representations and promises made by that defendant and certain provisions in his retainer agreements.  *Id*.

*Layfield*—which, again, is not precedent—was wrong on the law.  As discussed above, *Parr* was distinguished in *Bernhardt* because the mailings were *only* required by contract and *not* by law.  840 F.3d 1146-47.  Nothing in *Bernhardt* allows a court to ignore *Parr* where, as here, there is a legal duty, even if there are *also* contracts involved.

In any event, *Layfield* is plainly distinguishable on the facts.  There, "the indictment had alleged that in connection with causing clients to execute Retainer Agreements, Layfield represented, promised, and maintained the pretense that he and his firm would zealously and diligently represent clients' interests and hold, in trust for the benefit of each client, case disposition proceeds and use those proceeds only as permitted by applicable laws, rules, and regulations governing the ethical practice of law.  Those retainer agreements generally provided that the firm could deposit settlement money into a trust account without notice to, or further authorization from, the client."  2024 WL 9824376, *2 (cleaned up).  Therefore, the Ninth Circuit concluded, "Layfield's *fraudulent representations led to the firm's services to clients* which in turn led to the receipt of settlement funds that were then deposited into the trust account."  *Id*. (emphasis added).  There are no similar allegations in Girardi's indictment.  *See* ECF 1.  Nor has the trial evidence proved such facts.  On the contrary, the evidence reflects that Girardi Keese's clients got the full benefit of the legal services for which they contracted, which led to the substantial settlements that, by law, had to be deposited in the firm's trust accounts.  Even if the government had proved that Girardi Keese improperly took the settlement funds of the particular clients at issue *after* they were so deposited, the government has not alleged—let alone proved—a

1  scheme like that alleged in *Layfield*, where the defendant supposedly entered into *every*

2  attorney-client relationship with a scheme to defraud each client.  Girardi Keese had

3  many thousands of clients over the years and the government has not presented

4  evidence that the Mr. Girardi or the firm entered every attorney-client relationship with

5  the intent to eventually steal some or all of the money (nor could it because there were

6  thousands of clients during the scheme period who hired the firm, had their cases

7  resolved, and were paid without issue).  As a result, even if *Layfield* were correct and

8  binding (and it is neither), it would be inapplicable here.

9      For these reasons, and for the reasons previously stated, the Court should grant

10  Girardi's motion for judgment of acquittal.

11

                                        Respectfully submitted,

12
                                        CUAUHTEMOC ORTEGA
13                                      Federal Public Defender

14  DATED:  August 22, 2024        By   */s/ Charles Snyder*
                                        _____
15                                      CHARLES SNYDER
                                        Attorney for Thomas Girardi

16

17

18

19

20

21

22

23

24

25

26

27

28

                                        6